The President, Directors and Company of the Michigan State Bank *v.* Charles G. Hammond, Auditor General, Robert P. Eldredge, Secretary of State, John J. Adam, State Treasurer, and Eurotas P. Hastings.

The principles decided in the case of the *Michigan State Bank* v. *Hastings and others,* (ante, p. 225,) re-stated, explained, and affirmed.

Errors in the Chancellor's note in 1 Walk. Ch. R. 14, commenting upon the decision of this Court in the case of the *Michigan State Bank* v. *Hastings and others,* corrected.

The complainants being indebted to the state of Michigan, conveyed to the state in satisfaction of such indebtedness, certain real and personal property. In the agreement by which the property was conveyed, between the complainants and the commissioners empowered by the state to settle with them, it was declared that the assignment of the property was made upon, and subject to, the express condition, that the state should indemnify and save harmless the complainants, against certain claims and liabilities therein mentioned. By an act of the legislature, approved February 17, 1842, (S. L. 1842, p. 110,) the defendants, the Auditor General, State Treasurer, and Secretary of State, of Michigan, for the time being, were constituted trustees, on behalf of the state, to take charge of the property assigned, and dispose of it, &c. and pay the proceeds into the state treasury; and, as such trustees, they entered into the possession of it. Afterwards, the state neglected and refused to indemnify and save harmless the complainants against the liabilities mentioned in their agreement with the state, but suffered a judgment to be obtained against the complainants, on one of those liabilities, which the complainants were compelled to pay. Whereupon, they filed in the Court of Chancery a bill against the defendants, setting forth these facts, for the purpose of obtaining relief, out of the property in their hands, against the failure of the state to indemnify, according to the terms of the agreement. On appeal from the decree of the Chancellor dismissing the bill,

*Held,* that the conveyance by the complainants, to the state, was upon a condition subsequent;

That the state had failed to perform the condition;

That the property conveyed had thereupon reverted to the complainants, and the state ceased to have any legal interest in it;

That the possession of the defendants was no longer the possession of the state; that they had no longer any power, under the act of February 17, 1841, to control

Michigan State Bank *v*. Hammond.

or dispose of the property; and their further acts, in the exercise of such power, were their individual and personal acts, in derogation of the rights of the complainants.

*Held*, therefore, that the Court of Chancery had jurisdiction in this case, and that it could not be objected to that jurisdiction, that the defendants were state officers, acting under state authority; or, that the state was virtually, or must be made, a party to the suit.

It was admitted that the Court could not enforce a specific performance of the condition, or covenant to indemnify, contained in the agreement between the complainants and the state, as this could only be done by a proceeding directly against the state, which could not be sued in its own courts.

And, that an objection to the jurisdiction might, perhaps, be successfully urged, against a suit by the complainants against the State Treasurer, to recover proceeds of the property conveyed, paid into the state treasury; as he holds money paid into the treasury, not as an individual, but as an officer, acting under authority of the constitution and laws of the state, which makes his possession the possession of the state.

*Held*, further, that, upon the facts set forth in the bill, and a waiver by the complainants of any forfeiture growing out of the breach of the condition upon which they conveyed the property to the state, a court of equity would adjudge the defendants trustees of the property, for the benefit of the complainants; and would direct that the property, or its proceeds, in the hands of the defendants, or so much thereof as might be necessary for that purpose, be converted into money and be applied towards the payment of the damages suffered by the complainants, in consequence of the failure of the state to indemnify them, according to the terms of the agreement between the complainants and the state.

But he who asks equity, must do equity; and it appearing by the answer in this case, that the complainants had possession of a considerable portion of the property conveyed, and refused to deliver it to the state, *it was held*, that such relief would not be granted to the complainants, until they delivered to the state the property so retained by them, and which constituted a part of the fund out of which they were to be indemnified.

*Held*, also, that the complainants would not be entitled to such relief, unless upon a waiver of the forfeiture growing out of the breach of the condition, on which the property was conveyed to the state.

Equity will not lend its aid to divest an estate for the breach of a condition subsequent, although that aid will sometimes be extended to relieve against such a condition.

APPEAL from the Court of Chancery. The bill in this case sets forth the same facts, as are alleged in the bill

filed in the case of the *Michigan State Bank* v. *Hastings and others*, reported ante, p. 225, (which was between the same parties,) and also contains the additional averment, that, in consequence of the neglect and refusal of the state to indemnify the complainants against the claims and liabilities mentioned in the condition of the indenture or agreement set forth in the bill, a suit at law had been instituted in the Circuit Court for the county of Wayne, against the complainants, on a certain bond executed to, and secured by a mortgage to the Bank of Michigan, and which was one of the liabilities mentioned in said condition, and that the complainants had been compelled to pay said bond, amounting to $9,699.00, whereby they had been damnified, &c.

An answer was filed by Hammond, Adam, and Eldredge, three of the defendants, which admitted most of the material allegations in the bill, and which the decision of the Court renders it unnecessary to notice further than to state that it appeared therefrom, that a considerable portion of the assets assigned by the complainants to the state, were, as set forth in the bill, on the execution of the assignment, placed in the hands of Joy & Porter, as attorneys of the state, for collection ; and that said Joy & Porter now refused to deliver them to the said defendants, as trustees for the state, but claimed that they had reverted to the complainants, and that they now held them as attorneys for the complainants, and had the right so to hold them, and to make delivery thereof to the complainants.

To this answer a replication was filed.

Hastings, the other defendant, demurred generally to the bill.

The cause having been heard in the Court below upon the bill, answer, replication and demurrer, the Chancellor ordered the bill dismissed. (As to the grounds of the Chancellor's decision, *vide* 1 Walk. Ch. R. 9.) To re-

verse this order, the cause was appealed by the complainants to this Court.

*Joy & Porter*, for the complainants.

*Farnsworth*, Attorney General, and *Van Dyke & Emmons*, for the defendants.

W HIPPLE, J. delivered the opinion of the Court.

The present case involves the same legal principles which were so ably discussed and so fully considered by this Court at its last January term, in another and similar case between the same parties. (*Vide* ante, 225.) We are now called upon to decide whether the aspect given to the present case, will authorize us in granting the relief prayed for, and which was denied in the former one, for reasons stated in an opinion which I had the honor, as the organ of the Court, to deliver.

It becomes necessary, in the first place, to state with clearness the principles established by this Court, in the case last mentioned, before entering upon the discussion of those now presented for our decision. In doing this, I have a twofold object in view:—one is, to see how far those principles are applicable to the case before us;— another is, to correct some misapprehension which seems to have prevailed respecting the scope and extent of that decision. Upon an examination of the opinion it will be found to assert the following propositions :

1. That " the principle is well settled that while a state may sue, it cannot be sued in its own courts, unless, indeed, the state consents to submit itself to the jurisdiction of the Court." *Ante*, 236.

2. That " a person cannot be regarded as a party to a suit, who is not made one by the proceedings in the case, and does not appear in that character upon the record." *Ante*, 237.

3. That, "upon a case made by a bill, showing an entire want of authority on the part of a public officer to do an act, which act, when done, would leave the injured party remediless, a court of equity would grant its injunction to ward off the blow, although the state might be directly interested in having the act done." *Ante*, 239.

4. That the mere circumstance that a state is interested in the subject matter in controversy, does not, of itself, necessarily oust a court of jurisdiction; but such jurisdiction will be exercised in a variety of cases particularly referred to in the opinion. *Ante*, 238, *et seq.*

5. "That the estate granted by the complainants was upon condition." *Ante*, 266.

6.. " That, whether the commissioners on the part of the state, had the authority or not, to annex the condition, cannot-affect the legal rights of the complainants under the agreement, for the reason that the state had ratified and confirmed the acts of the commissioners, and were bound by the agreement made with the complainants." *Ib.*

7. " That the condition in the last clause of the agreement was simply to indemnify." *Ib.*

8. " That there had been no breach, by the state, of the condition." *Ib.*

9. "That so much of the act of 17th February, 1842, as rejects the condition, is a nullity, and of no efficacy in the law." *Ib.*

The decree of the Chancellor was affirmed in that case, because it appeared to us that the facts disclosed in the bill, did not entitle the complainants to the relief prayed for.

It is now contended by the counsel for the complainants, "that the whole case has been already determined, and that all the facts are now set up, which bring the case within the principles of the decision of the Court last

winter." If the counsel intended to assert that this Court, in the decision referred to, would have pronounced a different judgment, had the facts which appear in the bill *now* before us, been set out in the bill *then* before us, he certainly asserts what that decision will not justify. I take it for granted, however, that all the counsel intended by the remark was, that, from the principles laid down in that case, it was a fair inference, that the relief sought for would be granted, provided the difficulty suggested by the Court was obviated. It is not my habit to decide questions not raised by the pleadings, or to pronounce opinions not called for by the circumstances of the case before me. All the Court decided in that case, or intended to decide was, that, admitting the jurisdiction of this Court, yet relief could not be extended to the complainants, for the obvious reason that there had, in fact, been no breach of the condition annexed to the estate granted by the complainants to the defendants. But we went further, and suggested that, if " we could so construe the indenture as to intend that, in point of fact, the covenant to *indemnify*, meant a covenant to *pay*, as was the case in *Champion* v. *Brown*, and *Ranelaugh* v. *Hays*, insuperable difficulties would be interposed in the way of granting the relief sought for." *Ante*, 263. These difficulties we ventured to hint at, and then use this language : "I have treated the case, thus far, as though the covenant was not inserted in the indenture, as a *condition* annexed to the estate. I have considered it as though it did not, of itself, constitute the condition ; and it may be questionable whether, had it been a covenant to *pay*, instead of a covenant to *indemnify*, a court of equity would decree a specific performance. But that question does not necessarily arise, and no decision, therefore, is called for on that point." *Ante*, 263–4. These views were announced, to avoid the possibility of mistake, and to admonish counsel that other

difficulties besides the one on which the opinion of the Court was based, might be interposed to defeat the specific relief prayed for in the bill.

I have been induced to be thus particular in stating what was actually decided by this Court, at the last January term, for another reason : A volume of the reports of the Court of Chancery, now in the course of publication, having been put into my possession, I observed a note, appended by the Chancellor to his decision in that case, commenting upon the opinion of this Court, and in which, it is said, that the Supreme Court held that the Chancellor had jurisdiction of the case, "and consequently that it was competent for him to have given relief against the state, if complainants had made out a proper case by their bill; that is, had shown themselves damnified by being compelled to pay off the bond and mortgage which the commissioners agreed the state should pay. And *Osborn* v. *The Bank of the United States*, 9 Wheat. R. 738, noticed by the Chancellor in the concluding part of his opinion, was relied on by the Supreme Court, to show the jurisdiction of the Chancellor. They appear, however, to have overlooked the broad distinction between the two cases, viz : that one was a case of *tort*, and the other of *contract*. They admitted that the state could not be sued, and yet held the Court had jurisdiction to enforce a contract against the state, in a suit to which the state was not so much as a party. In *Osborn* v. *The Bank of the United States*, the bank sought relief on the ground that the act of the legislature, under which the officers of the state had acted, was unconstitutional and void ; and on that ground, and no other, obtained relief. The acts of a state officer, when unauthorized by the constitution and laws of the state, though done in the name of the state, are his individual acts, for which he alone, in his individual capacity, and not the state, is responsible. Such acts are the

individual acts of the person; and not of the officer in his official capacity, or of the state. While, in the case before them, relief was asked on the ground of a contract with the state, which contract it was insisted was good and binding on the state, and should therefore be performed by the state." Walk. Ch. R. 14, *note.* Sufficient has been shown to rescue the opinion of the Supreme Court from the absurdities in which it would be involved, if the note of the Chancellor contained a correct statement of the views expressed by us. That opinion is the best exponent of the views of this Court upon the questions presented for their consideration. Upon reviewing it, I have been unable to discover that it asserts the proposition that " *the state could not be sued, and yet held the Court had jurisdiction to enforce a contract against the state, in a suit to which the state was not so much as a party.*" No such absurd doctrine was maintained by this Court. It would argue a lamentable ignorance of the most familiar principles, to assert that a court of chancery could enforce the specific execution of a contract, as against a state, although the state was not a party to the record. In such a case, it is admitted that a court of chancery would, in an attempt to execute such a power, encounter a party who would not silently or tamely submit to its decrees. Again—it is said by the Chancellor, that " relief was asked on the ground of a contract with the state," &c. This is but a very partial view of the ground on which relief was claimed. It was insisted, it is true, that the state was bound to perform its agreement with the bank, and indemnify them against the liabilities mentioned in the condition annexed to that agreement; but the special ground relied upon by the complainants was, that, as there had been a violation of that agreement, the property assigned to the state had reverted, and that, under the circumstances, a court of equity might regard

the defendants in the light of trustees for the benefit of the bank, and decree, not that the state should execute, specifically, the agreement, but that the property remaining in their hands, should be regarded as a trust fund to indemnify.

I have thought it proper to refer to this criticism of the Chancellor, lest our silence might be construed into an acquiescence in its justice.   We lay no claim to infallibility, but feel bound to see that our opinions, upon questions so important, should not be perverted; and especially, that we should not appear to have entertained and expressed opinions so palpably absurd as those imputed to us.   In these remarks I do not intend, as a matter of course, to impute any intentional misrepresentation of my views, to the Chancellor, whose high character is sufficient to shield him against such an imputation.   But, admitting his right to criticise the opinions pronounced by this Court, in the mode adopted by him, we have no other means left of correcting any errors that may lurk in such criticism, than to expose them in such manner as will be most likely to set ourselves right before the public.

With these preliminary remarks, I shall now proceed to consider the only question which, in my opinion, is presented for our decision.   Will this Court, upon the facts appearing in the bill and answer, direct that the assets now in the hands of the defendants be applied towards the payment of the damages suffered by the complainants, in consequence of the failure of the state to indemnify them according to the terms of the agreement recited in the bill?   I have reconsidered, with much care, the opinion of this Court pronounced at the last January term, and find no reason for receding from the views we expressed on that occasion.   With respect to the question of jurisdiction, which is again pressed upon our notice by the learned counsel in behalf of the defendants, I have to re-

mark, that I subscribe very fully to almost every principle assumed by them in argument, and the reasoning by which those principles are supported, but will endeavor, presently, to demonstrate that they are inapplicable to the present case. I do not now contend, nor have I ever contended, that it is competent for this Court to decree, as against the state, the specific execution of the covenant to indemnify, contained in the agreement between the state and the bank. The opinion, an abstract of which I have given, indicates with sufficient certainty what the opinion of the Court upon that question would have been, had it been necessary in order to a decision of the case, that we should pass upon it. Nor do we hold it competent for this Court to make a decree against a state officer, acting within the scope of lawful authority, when such decree, although against the officer, would in fact be against the state. We assume no power to do that indirectly, which we may not do directly. But in whom is the legal interest of the property sought to be affected by the decree this Court is called upon to make in this case? We endeavored to show, and think we did successfully show, in the former case between the same parties, that the estate granted by the complainants to the defendants, was upon a condition subsequent; and that, up to the time of the filing of the bill in that case, there had been no breach of that condition by the state. We also declared what would be the effect of an actual breach of such condition by the state. We waived the consideration of the question, whether it was competent for the agents of the state to annex the condition, regarding the act of the 17th February, 1842, as a ratification, by the legislature, of the acts of their agents. We also denied the right of the legislature to convert an estate granted upon condition, into an absolute estate, or to reject the condition on the ground that there had been an excess of authority on the part of

its agents; holding that the estate could not be separated from the condition on which it was granted.   We further held, that the possession of the estate, by the state officers, acting under the authority of that act, was in all respects lawful, it being admitted that there had been no breach of the condition by the state.   The question now arises, whether the relation of the parties to each other, or to the subject matter in controversy, remains unchanged since the judgment of the Court in that case.

What was the legal effect of the neglect or refusal of the state to indemnify the complainants against the judgment rendered against them, on one of the bonds mentioned in the condition of the agreement entered into between the parties, which judgment the complainants aver they have paid ?   This question was answered by us in the opinion delivered at the last January term of this Court.   The estate assigned to the state reverted to the complainants. If so, they are the legal owners of that estate, and are entitled to the remedy which the law affords to reduce it to possession.   If this view be correct, the possession of the assigned property by the state officers, is not the possession of the state.   They no longer hold it, as is contended in the answer, by virtue of the act of the 17th February, 1842.   That act conferred a lawful authority on those officers to dispose of the assigned property for the purposes therein set forth, so long as the state itself had the right to that property ; but, when the state, *by its own voluntary act*, becomes divested of all right to the property,—when it becomes in fact and in law the property of the complainants, it cannot be said that the possession of the defendants is the possession of the state.   That possession, although lawful at the time of the passage of the act, became unlawful when the state forfeited the estate granted to them, by a breach of the condition upon which that estate was granted.   Any control over, or dis-

position of the property in question, under the provisions of that act, by the defendants, is in derogation of the rights of the complainants. The defendants can no longer seek shelter, for any acts of theirs in respect to that property, under the provisions of a law which has become inoperative. If this be sound law, it follows, that all such acts, though done under color of law, in the name of office, are, in fact, the *individual* and *personal* acts of the defendants.

To illustrate my views: Suppose an action for money had and received is commenced by the complainants against the defendants, to recover a sum of money now in their hands, and received by them on one of the securities assigned by the complainants to the state; who can doubt the result? The condition upon which the security was assigned being broken, the right of the state to collect and hold the money is forfeited, and the complainants are permitted to resume rights which they parted with, not absolutely, but conditionally. A court of law would not, for a moment, listen to a defence founded on the allegation that the defendants are state officers, acting by state authority, and are, therefore, protected by their connexion with their principal. The answer to such a defence would be, that, as the state had no legal interest in the subject matter in controversy, they are not a necessary party to the suit. This would be the answer to any question of jurisdiction that might be raised; and, the connexion between them and their principal being dissolved, they would be regarded as individuals holding money in their hands belonging to the complainants, and a recovery of that money would follow. If the money, to recover which the suit was brought, had been actually paid into the treasury by the defendants, it is admitted that, in a suit brought by the complainants against the state treasurer to recover it, the question of jurisdiction might, perhaps,

be successfully urged.    The state treasurer holds the money paid into the treasury, not as an individual, but as an officer acting under the authority of the constitution and laws of the state, which makes his possession of the money, the possession of the state; so that the controversy would be, in fact, between the state and the complainants. Yet, the court in which the case might be pending, would entertain jurisdiction of the case, until, in its progress, either the record or the evidence disclosed the facts upon which the question of jurisdiction might arise.    There are cases, however, where suits may be successfully prosecuted against a public officer, who, as such, has money in his hands belonging to an individual, and refuses to pay it over.    *Priddy* v. *Rose*, 3 Merivale, 102.

The present case, then, and that of *Osborn* v. *The Bank of the United States*, are not " *as dissimilar as any two cases well could be.*"    In the latter case, the original taking of the money from the bank was tortious, being in contravention of an act of Congress which was adjudged constitutional.    In the present one, the original taking was legal; but the breach of the condition of the agreement under which the state held the property, having worked a forfeiture, the possession of the defendants, as respects the complainants, is wrongful, because against law.    In the case of *Osborn* v. *The Bank of the United States*, it was adjudged that, as the taking was in violation of law, trespass might be maintained ; and, if trespass could be maintained, then an action on the case for money had and received would also lie.    In the case before us, trespass could not be maintained, as the original taking was not tortious ; but, if the property has reverted to the complainants, for the reason stated, an action on the case for money had and received may be maintained, to recover moneys received by the defendants, upon the assigned assets, subsequent to the forfeiture, and held by them at

the commencement of the suit;—the money being the property of the complainants, and the holding of the money by the defendants being, as respects the complainants, illegal. Again: The Supreme Court of the United States, in the case of *Osborn* v. *The Bank of the United States,* held, that a court of chancery will restrain an agent from paying over moneys to his principal, if that principal would not be amenable to law. So, in the case before us; if the moneys now in the hands of the defendants, or which may hereafter come into their hands, arising from the sale of the assigned assets, are by them paid into the treasury of the state, it is very doubtful whether it could then be reached, as the state, in whose vaults the money is deposited, is not amenable to law. In the same case the Supreme Court of the United States decided, that the agents or officers of the state of Ohio, having done the act complained of in violation of law, were not privileged by their connexion with their principal. In the case before us, the defendants are no more privileged than were the agents of the state of Ohio; for the reason, that they are engaged in disposing of property, under a law, the provisions of which are now inoperative. Without stopping to trace the parallel any farther between the two cases, it is quite clear, that in their prominent features, they are not so unlike each other as was supposed.

Are the complainants, then, upon the case as now presented, entitled to relief? In the former case between the same parties, we held that a court of equity would not lend its aid to divest an estate for the breach of a condition subsequent, although that aid would be sometimes extended to relieve against such a condition. We *cannot,* therefore, decree a forfeiture in the present case; and we certainly *would not,* did we possess the power, as it would operate most inequitably upon the rights of the state. Can we, then, regard the property now under the control

of the defendants, and in their possession, as a trust fund to indemnify the complainants against the losses they may have sustained, growing out of a breach of the condition of the agreement entered into between the complainants and the state ?   It is admitted that no decree could be effectual against the state.   It is also clear that no decree would be made in the case against the present defendants, if the answer disclosed such a state of facts as showed the state to be the party legally interested in the property now in their hands.   But the *legal* conclusion, arising from the facts stated in the answer is, that the state has no right to, or *legal* interest in, the property, and that, therefore, the defendants do not hold the same as the agents of the state.   The *legal* conclusion is irresistible, provided the ground we have assumed be correct, that the property has reverted to the complainants.   That it has reverted, I think is unquestionable.   The state of the case then, in a legal point of view is, that the defendants are in possession of certain property, claiming to hold and dispose of the same under the provisions of the act of 17th February, 1842.   The right to hold and dispose of the property, in the manner provided in that act, was undoubted at the time of its passage.   Matters *ex post facto* have arisen, which affect the rights of the parties to that property. The state has, by its own act, divested itself of that property, and the same has reverted to the complainants, just as effectually as though the state had actually returned it to them, after a breach of the condition on which the same was granted.   The property, then, is held by the defendants, not as trustees of the state, but as trustees of the complainants, and for their benefit.   That part of the act of 17th February, 1842, which transfers the property to the defendants, and directs it to be applied for the benefit of the public, has ceased to have any legal operation, unless it be contended that private property can be taken

for a public use without compensation. Now, if the premises I have laid down be true, is it not clear that an appropriation of the property in question, for the purposes declared in the act, since it has reverted to the complainants, would be a violation of private rights, and against law? If it would, is it not equally clear, that it is the province of this Court to interpose its authority, and prevent the defendants from doing an act in violation of law? Such interposition will be justified, unless a court of law is clothed with all the necessary powers to do ample and complete justice between the parties. It may be contended that actions of ejectment might be commenced, and recovery of the real estate had in this way; and that actions of trover, or for money had and received, might be instituted for the recovery of the securities now in their possession, or for moneys in their hands, realized from such securities. But who does not see that such a remedy would operate most oppressively upon the complainants, and most inequitably upon the state? I do not see, therefore, why it is not competent for this Court to hold that the property now in the hands of the defendants, be appropriated according to the prayer of the bill. Such a course, I think warranted by the case made by the bill and answer, and will best subserve the purposes of justice.

I have not permitted myself to examine into the transactions between the state and the complainants previous to the settlement had between them. The commissioners on the part of the state may have transcended their powers;—the settlement itself may have been unwise and inequitable;—the commissioners may have made a bad bargain for the state;—all this may be very true. But it was in the power of the state to have repudiated that settlement, if there was an excess of power on the part of its agents. This they did not do. On the contrary, they af-

firmed the acts of the commissioners, and adopted the agreement made by them with all its advantages and disadvantages.   By that agreement the state must abide.

But, as the complainants ask equity, they must do equity, and place in the hands of the defendants all the property in their custody and possession, or under their control, assigned to the state by the bank.   It is averred in the answer, that Messrs. Joy & Porter hold a considerable portion of the property in their hands for the bank.   This property, therefore, ought to be delivered over to the defendants, and constitute a part of the fund out of which the bank is to be indemnified.   The retention of the property by the bank would be inconsistent with the relief we are disposed to extend to them.   Again—the bill does not aver a willingness on the part of the complainants to waive the forfeiture growing out of a breach of the condition of the agreement between them and the state.   The complainants are not entitled to relief here, unless they will waive the forfeiture.   They cannot insist on being indemnified, and avail themselves hereafter of the forfeiture.   It may be that, having come into a court of equity for relief, they would be estopped from insisting on the forfeiture.   This may, and probably would be the legal effect of the decree we are disposed to make ; but to avoid all further difficulty hereafter, there should be an express waiver.   A court of equity will, however, hold the defendants as trustees.

GOODWIN, J. being a stockholder in the Michigan State Bank, did not participate in the decision.

After the opinion was delivered, a decree was entered, by the consent of parties, in substance as follows :

It is ordered, adjudged and decreed, that the defendants, Hammond, Eldredge, Adam and Hastings, are, and do stand as trustees of the complainants, and for

their benefit, to the extent herein after mentioned, of the property and effects, notes, accounts, real estate, mortgage securities and choses in action assigned and conveyed by the complainants to said Hastings, late Auditor General, and to said Hastings, Thomas Rowland, late Secretary of State, and Robert Stuart, late Treasurer of the state of Michigan, as set forth in the bill, which may have come into the possession, and are now in the possession of the defendants, or either of them, or their attorneys or agents, or either of them; and also of the proceeds of said property, &c. in their possession or control; and also of all property and securities into which the said property, &c. or any part thereof, may have been converted, or changed, or for which the same may have been sold, by the defendants, or either of them, or which may have been received in exchange therefor, or for any part thereof, and which, at the date of this decree, remain in the hands, or stand in the names of the defendants or either of them; being the same property, &c. mentioned in the indenture and schedules thereunto annexed, executed on the first day of May, 1840, between the complainants and the said Hastings, Rowland and Stuart, commissioners on behalf of the state, and set forth in the bill of complaint in this cause;

That the complainants do and shall have a lien thereon, to the extent, and for the amount of the damages sustained by them, by reason of the breach of the condition in said indenture;

That it be referred to one of the masters of the Court of Chancery, to ascertain and report to said Court the amount of said damages;

That said Hammond, Eldredge and Adam, (they assenting thereto,) be appointed receivers, under the direction of the Court of Chancery, by one of the masters thereof,

to whom it shall be referred for that purpose, to take possession and charge of said property, &c.;

That, thereupon, an account shall be taken, before such master, of all the property, &c. and that, upon such account being taken, the defendants shall appear before said master and submit to an examination touching all such property, &c. make a full discovery thereof, and, under the direction of said master, assign and convey such property, &c. to the receivers who shall be appointed to take charge thereof, for the purposes of this decree ;

That James F. Joy, and George F. Porter, the President of the complainants, shall, in like manner, appear before said master, and submit to like examinations ; and that both they and the said complainants, shall, in like manner, assign, transfer and convey to said receivers any of said property, &c. which may be in their control or in the control of either of them, or in the hands of their agents or attorneys ;

That the said receivers shall, under the direction of the Court of Chancery, convert said property, &c. into money, so far as may be necessary to satisfy the complainants the amount of damages reported by the master to have been sustained by them, in consequence of the breach of said condition in said indenture, and the interest thereon, and the costs of this suit to be taxed, and out of the proceeds of said property, &c. pay to the complainants the said damages, interest and costs ;

That, having paid the same, the said receivers shall assign, convey and deliver all the remaining portion of said property, &c. to the individuals who shall, at that time, hold the offices of Auditor General, Secretary of State, and State Treasurer of the state of Michigan, or to such other persons as the Court of Chancery may designate and appoint, for the use and benefit of said state ;

That, before availing themselves of the benefit of this

decree, the complainants shall file with the Register of the Court of Chancery, a stipulation to waive all right to insist upon a forfeiture of any breach of the condition contained in said indenture;

And that the cause and proceedings therein, and this judgment and decree, be remitted to the Court of Chancery for the First Circuit, to the intent that such further proceedings may be there had as may be necessary to carry this judgment and decree into effect.