Caroline Wallace *et al.*, complainants, *vs.* Almon H. Pidge *et al.*, defendants.

A written agreement was made for the conveyance of certain lands by the vendor on or before a day named, and for the payment of the purchase money by the purchaser upon the execution of the deed; the purchaser taking possession of the land at the date of the agreement. Before the maturity of the agreement, the time of payment was extended by the vendor. After the extension had elapsed, the vendor received partial payments from the purchaser, who subsequently asked for further time, which request the vendor would neither expressly grant or refuse. Subsequently, no deed of the land having ever been tendered, or payment of the purchase money demanded, the representatives of the purchaser offered to pay the balance of the purchase money, and demanded a deed of the vendor.

*Held*, that time was not of the essence of the agreement; that it was still in force, and the vendor bound to convey upon the payment of the remainder of the purchase money.

Appeal from the Circuit Court from the County of Berrien, in Chancery.

Bill by purchaser, for specific performance of an agreement to convey lands. Upon the hearing, the Circuit Court for the County of Berrien dismissed the bill of complaint, upon which an appeal was taken to this Court.

The facts being fully stated in the opinion of the Court, need not be here recited.

*Joseph Miller, Jr.*, for complainants.

—— *Muzzey*, for defendants.

By the Court, Copeland, J.

This is an appeal from the judgment of the Circuit Court of Berrien County, dismissing the bill of complaint filed

by the complainants, the widow and heirs of Robert Wallis, deceased, against the Administrator, the widow and heirs-at-law of Charles G. Pidge, deceased. The bill was filed for the specific performance of a contract for the sale and conveyance of real estate, made August 21, 1844, by and between Robert Wallis and Charles G. Pidge, wherein Pidge agreed, on or before the 31st day of August, 1849, to convey by deed, with warranty against all encumbrances, the land particularly described in the bill. In consideration whereof, Wallis agreed to pay, on the delivery of the deed, $500, with interest from the date of the contract. Wallis also agreed to pay all taxes on the land, and to clear ten acres in each year for five years. In case of a failure to do the clearing and pay the taxes, Pidge had a right to re-enter and forfeit the contract. But, upon such re-entry and forfeiture, Pidge was to pay back all money paid on the contract for the land, and nothing for the improvements. The evidence showed that Wallis cleared over thirty acres of the land, and paid the taxes regularly, and, on the 21st day of December, 1850, paid on the contract, $51.73; on the 8th of December, 1851, $19.12; and in April and June thereafter, paid $1.37 and $0.59.

Robert Wallis lived on and occupied the land, till his death, on the 31st of December, 1852, and his widow is still in possession; and Charles G. Pidge died intestate in June, 1852. In August, 1851, the parties to the contract endorsed upon it and signed a stipulation to extend the payment to January 1st, 1852. In May, 1852, Wallis desired a further extension, and Pidge declined to tell him then whether he would extend the time or not, saying that he was going West, and, if he should like it, he wanted to sell and go West. Neither Pidge, in his lifetime, nor his legal representatives, since his death, have ever tendered a deed and demanded payment on the contract, nor offered to re-enter, for breach of the contract, or to pay back the money paid by Wallis

on the contract; nor has Wallis, or his representatives, paid any more than above stated, or further performed on their part. In this stage of the case, before filing the bill, the complainants' counsel called on the widow and one of the Administrators, and stated that the complainants were ready to make payment, and desired to know if they would make, or see that a deed was made for the land. They refused, and claimed then, as they have here claimed in their answer, that the contract was forfeited. There is some evidence going to show that the complainants supposed the contract forfeited, by reason of non-payment at the stipulated time, and that Pidge, in his lifetime, and his representatives, since his death, were of the same opinion.

From a careful investigation of the facts, and the law applicable to this case, I think the contract between Robert Wallis and Charles G. Pidge is in force, and not rescinded or forfeited by lapse of time. It seems that Charles G. Pidge, in his lifetime, never desired to treat it as forfeited, but continued to receive payments upon it; and, by not tendering a deed and demanding the money, and by neglecting to re-enter for breach, and to pay back the money paid by Wallis, he chose rather to consider the contract in force; and Wallis, by continuing in possession, under the contract, still held himself liable to pay the contract price.

There is no force in the objection, that there is no mutuality in the contract, for the contract, by its terms, binds Wallis to pay $500 and interest, *on the delivery of the deed;* and, even if it did not, Wallis, by taking possession under the contract, would render himself liable to pay the purchase price. To regard this contract to have been mutually dependent, and that the delivery of the deed and the payment of the money were intended to be simultaneous, is the most favorable view that can be taken of it in behalf of the defendants—that Pidge could not put Wallis in default, unless he tendered a deed, and demanded the money. Nor

could Wallis put Pidge in default, except by a tender of the money and demand of a deed.    Under a literal construction of the contract, the delivery of a deed by Pidge must precede the payment of the money, leaving Wallis not in default at all, but as having been more prompt, even, than his contract required.

I do not think that time was considered as of the essence of the contract, in its inception, or that it was considered or treated so by either of the parties to it, in their lifetime, or that it ought to be considered so in any construction to be put upon it by the Court; the time for the delivery of the deed being uncertain, in the first place—being " on or before the 31st of August, 1849;" then in August, 1849, it was extended two years; then in the year 1852, in May, prior to the death of Pidge in June, Wallis asks for *more time*, and Pidge cannot tell whether he will give more time or not. Now, it seems very just and equitable, that after parties themselves have so dealt together, that Courts should not allow one of the parties to obtain an advantage of the other, by suddenly considering time material, without proper notice of such an intention, and, when such an attempt is made, will look carefully to see that the party making the attempt is guilty of no laches on his part; and the Court will never allow it, after such dealings together, where it results in hardship to the party against whom it is attempted.

In More *vs.* Smedburg (8 *Paige*, 600), the Chancellor says, as a general rule, if the vendor receives payment of a part of the purchase money, after the time of payment fixed by the terms of the agreement has expired, or if the vendee continues in possession under the agreement, long after the time specified therein for giving the deed, a Court of Equity may consider a strict performance at the day as waived, and a party who has thus waived a literal performance of the terms of the agreement, will not afterwards be permitted to insist upon a forfeiture, without notice to the other party,

Caroline Wallace *et al.*, complainants, *vs.* Almon H. Pidge *et al.*, defendants.

and giving him a reasonable time to perform on his part. (*Edgerton* vs. *Peckham*, 11 *Paige*, 352; *Avery* vs. *Kellogg*, 6 *Conn.*, *Second Series*, 562; *Tyree* vs. *Williams*, 3 *Bibb*, 365.)

The Court say, in the latter case, where a time is fixed for the performance of a contract, it is at law considered to be the essence of the contract; but, unless the parties have expressly stipulated that it shall be so, it is otherwise considered in a Court of Equity; and its execution will be decreed, notwithstanding the time has elapsed for its performance, unless there has been culpable negligence or willful delay on the part of him who is seeking the aid of a Court of Equity. (2 *Story Eq. Jur.*, § 776.) Such also is the doctrine of the English Courts. (*Gibson* vs. *Patterson et al.*, 2 *Atk.*, 12; *Euton* vs. *Lyon*, 3 *Ves. Jun.*, 695, *note* 2; *Parkin* vs. *Therald*, 11 *Eng. L. and Eq.*, 279.)

It is claimed for the defendants, that the value of the property has materially changed, and that, therefore, the Court will not decree a specific performance. Where the price agreed for in the original contract greatly differs from the value, it is an ingredient which, associated with others, will contribute to prevent the interference of a Court of Equity. But the evidence does not show this land to have so much increased in value, as to change the view which might otherwise be taken of the case. To deny to the complainant a specific performance, would result in the hardship of taking from the first nine years of toil and hard labor in clearing and improving the land, and giving it to the defendants. Whereas, no inequity results from the defendants recovering the full purchase price of the land sold, with interest on the whole thereof, from the date of the agreement to sell.

The decree of the Circuit Court must be reversed, and the case referred to a Commissioner to take an account, etc.

Present, COPELAND, DOUGLASS and MARTIN, J. J.