## CURRY *v.* CURRY.

1. EQUITY — FORFEITURES — LAND CONTRACTS — DEFAULT — VEN-
   DOR AND PURCHASER.

   Equity does not favor forfeitures, and, when time is not of
   the essence of the contract, relieves against them when
   harsh and hasty steps to enforce for default in payment
   are unjust and inequitable.

2. VENDOR AND PURCHASER—LAND CONTRACTS—DEFAULT—ACQUIES-
   CENCE—TIME NOT OF ESSENCE OF CONTRACT.

   Where the vendees' default was acquiesced in and condoned
   over a long series of years by the continued acceptance of
   payments by the vendors, time was not of the essence of
   the contract.

3. SAME—EQUITY—TRUSTS—LEGAL TITLE HELD IN TRUST.

   In equity the vendor under a land contract holds the legal
   title as trustee for the vendee, and trust relations are an
   element of the contract.

4. SAME—FORFEITURE WITHOUT CHANCE TO REDEEM NOT FAVORED
   BY EQUITY.

   While forfeiture may be contracted for as a basis for
   expeditious termination of the relation of vendor and ven-
   dee in a land contract, drastic measures taken after for-
   feiture to seize possession without warning and thereby
   cut off the vendee's last chance to redeem as recognized
   in summary proceedings are not, between vendor and
   vendee, entitled in equity to as tolerant consideration as
   in cases involving only the relation of landlord and ten-
   ant.

5. SAME—FORFEITURES—ACTION BY VENDOR TO REGAIN POSSESSION.

   Upon appropriate steps following forfeiture of a land con-
   tract, three actions are open to the vendor: A suit in
   equity to foreclose the contract; an action of ejectment;
   proceedings under the statute to recover possession by
   summary proceedings.

6. SAME—ILLEGAL POSSESSION NOT RECOGNIZED IN EQUITY.

   Where defendant vendor used a key which was in his pos-

session as an employee of the vendee to enter the building in the nighttime and bar part of the same against said vendee, after declaring a forfeiture, such possession cannot, in equity, be recognized as a peaceable re-entry and ouster of a defaulting vendee who up to that time was in possession of the property under his contract.

7. SAME—TENDER OF AMOUNT DUE—RELIEF FROM FORFEITURE—SPECIFIC PERFORMANCE.

Tender of full amount due, with costs, within six days of notice of forfeiture, *held*, to entitle vendees to a decree relieving them from said forfeiture, on payment of same within 30 days, on their suit for specific performance of their contract, in view of 3 Comp. Laws 1915, § 13253, as amended by Act No. 243, Pub. Acts 1917, giving defaulting vendee 30 days after judgment of restitution in summary proceedings by the vendor in which to pay the amount found due.

Appeal from Shiawassee; Collins (Joseph H.), J. Submitted January 19, 1921. (Docket No. 91.) Decided March 30, 1921.

Bill by Ira G. Curry and another against Arthur L. Curry and another for the specific performance of a land contract. From a decree for plaintiffs, defendants appeal. Affirmed.

*Pulver & Bush*, for plaintiffs.

*Selden S. Miner* and *Leon F. Miner*, for defendants.

STEERE, C. J. The parties to this suit are two brothers and their wives, who are sisters. Plaintiffs pray for relief from forfeiture and ask specific performance of a land contract given them by defendants covering a lot of 21 feet front with a three-story and basement brick building thereon, located on East Main street in the city of Owosso. Plaintiff Ira G. Curry had long conducted a hardware store in the building. The property formerly belonged to Lewis V. Curry, father of Ira and Arthur Curry, who died in 1910.

An adjustment of his estate resulted in defendant Arthur Curry becoming the owner. He was then working for Ira and sold him the property for $6,000 under a land contract, remaining in his employment in the hardware store, which the latter continued to operate in this building until this suit was heard.

The contract, dated June 15, 1910, runs from defendants to plaintiffs, being signed and acknowledged by all four of them. It is a common short form of land contract. The purchase price is made payable within 5 years, with interest at 6 per cent. per annum, payable semi-annually on all sums remaining unpaid. The vendees are required to keep the buildings insured in the vendors' favor to the amount of $3,000 and pay all taxes of every nature assessed against the property. It contained the not unfamiliar forfeiture clause for nonperformance, authorizing the parties of the first part to immediately declare the contract void, treat parties of the second part as tenants holding over without permission and remove them therefrom, in case of any failure by the latter "to perform this contract or any part thereof." It contains no provision making time the essence of the contract.

The family and business relations of the parties appear to have continued amicable and Arthur remained in his brother's employ until shortly before this bill was filed early in January, 1920. During that time he worked in various capacities in and around the store, part of the time at tinning and plumbing, and also as clerk and salesman, and other general work necessary around a hardware store. He carried a key to the store and in the line of his employment had like access as his employer to the various parts of the premises. It is undisputed that almost from the beginning plaintiffs did not keep up their payments in accordance with the terms of the contract; and it is also shown without dispute from entries made at the

time that payments, often in small amounts, were made upon it and accepted by Arthur in a continuous series extending for 9½ years after the contract was made, and until this litigation arose, although the amount yet due was then greater than when the contract was made. The amounts and times of payments made to Arthur by Ira are apparently unquestioned. The latter carried insurance upon the building up to $3,000, assigned or payable to Arthur, made certain repairs and paid the taxes upon the property except for two years, upon which he only paid $41.65 and Arthur paid the balance out of some money he borrowed from the bank for that and other purposes. Ira paid the interest on the portion of that loan which went to pay those taxes. Payments were made and accepted on this contract in each month during 1919. Ira at times had tenants on the second floor of the building who usually paid their rent to him, but occasionally paid it to Arthur, who in such cases gave them receipts signed Ira G. Curry, sometimes writing "Art" beneath. Several such receipts so signed by him were produced in evidence, one given as late as December 30, 1919. A recent tenant named Siess, who ran a small cigar factory in a room over the hardware, was told by Arthur on October 3, 1919, when he went to see about paying his rent, to pay it to Ira, which he thereafter did, drawing checks to him on the 9th of each month. These items of rent were all paid by Ira to Arthur along with other payments and credited by him on the contract. Arthur admitted the receipt of six small payments made him by Ira in December, 1919, which he credited on the contract, one of which was a $15 payment by Siess. Of the rent he testified on cross-examination:

"Every dollar of rent received from the building, whether paid to Ira or to me, went to me and I credited it to Ira upon his contract account."

That this contract was unforfeited, recognized by defendants as yet operative, and, as a matter of law, remained in full force and effect until December 30, 1919, is conclusively established. Shortly before December 30, 1919, Ira broached the subject of taking Arthur into partnership with him in the hardware business. What passed between them during their discussion of that subject is in marked dispute, but it does appear that serious differences developed in which Arthur asserted the contract was forfeited and Ira had no further interest in the property under his contract, which the latter disputed.

On December 30, 1919, a notice of forfeiture prepared by counsel was served upon plaintiffs at the instance of defendants. On the morning of Saturday, January 3, 1920, Ira went to his store as usual but could not open the door with his key and on investigation found the store and basement in which he had goods locked and barred against him. He also found on the outside a three-word note in Arthur's handwriting referring him to an attorney. He was thereafter excluded from his store and unable by peaceable means to open or enter it until the following Tuesday, January 6, 1920, when enforced exclusion was relieved by a temporary injunction issued by the circuit court, in chancery, of that county. It was learned on cross-examination of Arthur that he had effected this sudden measure of exclusion during closing hours of business when his brother was absent by letting himself into the building at about 11 o'clock of the night before, using for that purpose the key of the store which he carried, and then firmly barred the doors on the inside against entrance of the store or basement from without. He did nothing to exclude the tenants or anybody else from the second or third floor of the building. At that time part of Ira's stock of goods was on the third floor, as well as the first floor and basement.

No part of the stock was removed from the building. On January 3, 1920, after Arthur had barred the doors, as stated, defendants served two notices on plaintiffs, stating that, having given notice of forfeiture, they had taken possession of the premises, but claimed no interest in stock of merchandise in the building and plaintiffs on due notice would be given opportunity to remove the same. On January 5, 1920, counsel stipulated that if a sufficient amount was tendered by plaintiffs and refused the exact amount due would be left to subsequent determination and the tender regarded as kept good. On January 6, 1920, plaintiffs made defendants a tender in due form of $8,500, to cover the full amount due on the contract and any unpaid taxes, which was refused. This bill was then filed upon the same date.

Many pages of the record are devoted to a schedule of payments on the contract, with computation of balances due from time to time, including interest on interest, from which the trial court found there was yet due on the contract the sum of $8,482.12, covering all charges and arrearages within its purview up to the time of the hearing. This computation is not challenged by defendants, though gone over by Arthur, as he testified, and is apparently accepted as correct.

We do not deem it necessary to review in detail the arguments made by counsel upon the equities involved with extended citation of authorities directed to the propriety of granting or refusing equitable relief. It is elementary that equity does not favor forfeitures, and when time is not of the essence of the contract relieves against them when harsh and hasty steps to enforce for default in payment are unjust and inequitable, while by permitting full and prompt performance by the defaulting party no injustice results to either.

Time was not of the essence of this contract. Mani-

festly it was not so treated or regarded by either party. Plaintiffs, though sadly in default, had made substantial payments on the contract, amounting in all to over half the original purchase price. Their continuing default was in failure to make full payments when due, which was acquiesced in and apparently condoned by continued acceptance of smaller payments applied on the contract through all those years. Unquestionably, defendants could have long before compelled plaintiffs to promptly pay the full amount due on their defaults or by proper proceedings dispossessed them and nullified the contract. This they did not see fit to do, but permitted the contract to remain in force, steadily accepting payments thereon until a quarrel between the brothers was promptly followed by declaration of forfeiture without final demand of payment or other warning and a surreptitious seizure of possession of the store in evident attempt to avoid the possibility of redemption, which customary legal proceedings to obtain possession might permit.

Defendants' counsel cite, and, in justification of Arthur's stealthy entry in the nighttime, rely upon a line of cases involving forfeiture which sustain repossession thereafter by peaceable entry and retention by force, if necessary. These cases relate for the most part to questions between landlord and tenant in which the defaulting tenant never had any ownership or equitable interest in the title to the property as a vendee. In equity the vendor under a land contract holds the legal title as trustee for the vendee and trust relations are an element of the contract. While forfeiture may be contracted for as a basis for expeditious termination of those relations, drastic measures taken after forfeiture to seize possession without warning and thereby cut off the vendee's last chance to redeem as recognized in summary proceedings, are not between vendor and vendee entitled in equity to as toler-

ant consideration as in cases involving only the relation of landlord and tenant. Upon appropriate steps following forfeiture, this court has said:

"Three actions were open to the complainant upon the failure of the vendee to make payments, and the service of notice upon him declaring the contract forfeited: (1) A suit in equity to foreclose the contract; (2) an action of ejectment; (3) proceedings under the statute. The first two actions exist independent of the statute. The third is purely statutory. The only violation of the vendee's contract in this case was his failure to make payments. This brought him directly within the terms of the statute. He who seeks possession for violation of a lease or contract of sale for nonpayment of money due thereunder takes the remedy subject to the conditions imposed by the statute. The statute was designed to provide a speedy and summary remedy for obtaining possession of lands held over contrary to these agreements, and in doing so it also sought to give the lessee or vendee another opportunity to retain the benefit of his contract by payments within five days, where the failure to pay was his sole default." *Lambton Loan & Investment Co.* v. *Adams*, 132 Mich. 350.

This contract gave plaintiff immediate possession of these premises at the time of its execution. From that time Ira Curry was in undisturbed legal possession, personally and through his employees and tenants, daily conducting a long established, going hardware business there, occupying for that purpose three of the four floors of the building until the closing hours of Friday evening, January 2, 1921. The fact that he was absent during that night, leaving his place of business closed and locked in the customary manner, did not change the nature of his possession. Arthur's right of access to the locked store by the key he carried was only that of an employee in the line of his employment. His hostile night activities were confined to the store floor and basement in which he was employed. He effectually bolted all doors to that part

of the building with hasp locks and bars nailed across, leaving the second and third floors undisturbed with Ira and his tenants in the same possession as before. As to that part of the building there was not, even by the questionable method pursued, a re-entry and ouster. In *Maday* v. *Roth*, 160 Mich. 289, it is indicated that a partial ouster and re-entry are not sufficient.

But aside from that technicality we think the trial court rightly held that under the circumstances of this case such stealthy closing down of his employers' business by Arthur in the nighttime cannot in equity be recognized as a peaceable re-entry, and ouster of a defaulting vendee up to that time in possession of the property. Defendants were seeking possession on violation of a contract of sale for nonpayment of money due thereon and, as stated in the *Adams Case,* could have foreclosed the contract, brought an action of ejectment or, more speedily, resorted to the provided statutory remedy to recover possession by summary proceedings, which, under section 13253, 3 Comp. Laws 1915, as amended by Act No. 243, Pub. Acts 1917, gives the defaulting vendee 30 days after judgment of restitution to pay the amount found due, with costs. Within six days after notice of forfeiture and three days, including a Sunday, after the stealthy seizure of the business portion of the building, plaintiffs tendered payment in full, which was refused.

The decree of the lower court relieving plaintiffs from forfeiture on payment within 30 days of $8,482.12, with interest thereon at contract rate from June 7, 1920, is in substance affirmed, with costs of this court to plaintiffs, except that time for payment is extended to 30 days from filing of this opinion. In default thereof defendants will have decree of dismissal, with costs.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.