## WALLER *v.* LIEBERMAN.

1. VENDOR AND PURCHASER—LAND CONTRACT—DEFECTS IN TITLE —DELAY IN PERFECTING ABSTRACT EXCUSE FOR DELAY IN PAYMENT.

Objections to the title of land raised by the attorney for the vendee, *held,* under the record, not unreasonable or made in bad faith, and that the time required to remedy the defects pointed out would operate as a good excuse for the vendee's delay in making payment, which, according to the terms of the contract, was to be made when the abstract was brought down to date; there being nothing in the contract making time of the essence thereof.

2. SAME—TIME NOT OF ESSENCE OF CONTRACT.

Naming of a date on which the payment shall become due does not in itself make time of the essence of the contract.

3. SAME—PERFORMANCE—WAIVER—ORAL WAIVER.

Performance within the time specified in the contract may be waived by oral or written agreement extending the time.

4. SAME—CONSENT TO DELAY—WAIVER.

Where, at the time a payment fell due, plaintiff was sick, and a few days later defendant's agent wrote plaintiff that defendant was willing that the matter be left until plaintiff was able to attend to same, performance on the agreed date was waived by defendant.

5. SAME—NOTICE—DEFAULT—WAIVER—FORFEITURE.

A notice to terminate a land contract was ineffectual where based on plaintiff's failure to pay the balance due in accordance with the terms of the agreement which had been waived by defendant, and where it also failed to fix any time for payment.

6. SAME—PAYMENT—TENDER—DUTY OF VENDOR TO ACCEPT.

On tender of payment by plaintiff after ineffectual notice

by defendant that the contract was forfeited, it became the duty of defendant, as a matter of law, to deliver the deed to plaintiff.

7. SAME—ORAL AGREEMENT TO CANCEL—FRAUDS, STATUTE OF— RELEASE BY OPERATION OF LAW.

The conduct of the parties to the contract on a certain date, which defendant claims operated as a cancellation of the contract by mutual consent, *held,* in the light of their conduct on that and succeeding days, insufficient to operate as a release by them of their mutual obligations thereunder; nor did the same amount to a surrender or release by operation of law under 3 Comp. Laws 1915, § 11975.

8. SAME—FRAUDS, STATUTE OF—CANCELLATION OF LAND CONTRACT TO BE IN WRITING.

The statute of frauds (3 Comp. Laws 1915, § 11975) requires the release or surrender of rights in a land contract to be in writing, unless effected by operation of law.

9. SPECIFIC PERFORMANCE—DISCRETION OF COURT—EQUITY.

Specific performance of contracts must always rest in the sound discretion of the court, to be decreed or not, as shall seem just .and equitable under the peculiar circumstances of each case.

10. SAME—LAND CONTRACT—FRAUD—EQUITY.

In a suit for the specific performance of a land contract, in the absence of any evidence of any fraud or overreaching in the making of the contract, that the property had increased in value, or of any circumstance that would render it inequitable to have the contract specifically performed, the decree of the court below dismissing the bill should be reversed, on appeal, and decree entered for plaintiff.

11. SAME—SPECULATION NOT BAR TO SPECIFIC PERFORMANCE.

That a land contract was entered into by the vendee for speculative purposes, is an insufficient reason for refusing specific performance.

12. SAME—PAYMENT—TENDER—BORROWED MONEY.

That the tender of payment of a land contract was made with borrowed money is unimportant, and does not render the tender invalid.

13. SAME—GOOD FAITH—ABILITY TO PERFORM.

Where the vendee in a land contract makes the substantial down payment of $1,000, it cannot be said that he entered into the agreement knowing his inability to fulfill, although it may be necessary for him to resell in order to make "his ends meet."        ·

14. SAME—TAXES PAID BY VENDOR A LIEN.

Where the vendor has paid the taxes, the same, with interest, should be included in computing the amount due from vendee, who agreed to pay them, on decree for specific performance.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted April 29, 1921. (Docket No. 69.) Decided June 6, 1921.

Bill by George Waller, administrator of the estates of Arthur N. Greene and Otto C. Carpel, deceased, and others, against John P. Lieberman for the specific performance of a land contract. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*Percy J. Donovan* (*Frank W. Atkinson*, of counsel), for plaintiffs.

*Thomas G. Long* and *Rockwell T. Gust* (*Stevenson, Carpenter, Butzel & Backus*, of counsel), for defendant.

STONE, J. This case is in this court upon the appeal of the plaintiffs from a decree below dismissing the bill of complaint. The original bill of complaint was filed by Arthur N. Greene praying for the specific performance of a land contract made April 29, 1916, by the defendant as vendor, and by John J. Walsh as vendee. The contract was, on June 7, 1916, assigned by Walsh to Arthur N. Greene, and was in the first instance made by Walsh as the agent of Greene. The contract was in the words and figures following:

"Agreement of sale, made and entered into this 29th day of April, 1916, by and between John P. Lieberman of Detroit, Michigan, owner in fee of the following described property, and John J. Walsh of Detroit, Michigan, viz:

"All those parcels of land situate and being in the township of Springwells, county of Wayne and State of Michigan, and described as follows: Lots numbered 1, 3, 4 and 5, of the subdivision of the estate of Alexander Campbell, deceased, situated on the southeast part of section 8, in town 2 south of range 11 East, according to the plat, as recorded in liber 5 of plats on page 9 of said Wayne county records.

"Also the following described parcel (excepting a piece in the southwest corner of said parcel 90x125 ft.) described as part of the fractional section No. 17, in town 2 south of range 11 East, bounded as follows:

"Beginning at the northeast corner of said section thence west on section line 10-27/100 chains to a post; thence about south 23 degrees and 30 minutes east to the center of the Chicago road; thence north 69 degrees and 35 minutes east, on the center of the road, 5-54/100 chains to a post on the east line of said section; thence north on said section line 11-75/100 chains to the place of beginning, containing 10, 4/100 acres.

"The said John P. Lieberman sells to John J. Walsh, the above described property for a consideration of eighty thousand ($80,000) dollars, to be paid as follows:

"One thousand ($1,000.00) dollars, the receipt of which is hereby acknowledged. Nineteen thousand ($19,000.00) dollars when the abstract is brought down to date, and the balance to be paid twenty thousand ($20,000.00) dollars one year from date of sale, and twenty thousand ($20,000.00) dollars two years from date of sale, and twenty thousand ($20,000.00) dollars three years from date of sale, with interest at six per cent. payable semi-annually, deferred payments to be evident by purchase money mortgage and purchaser to assume all taxes and assessments.

"Witness:
"GEO. WALLER,            JOHN J. WALSH
"A. E. GREEN             JOHN P. LIEBERMAN."

It is the claim of the defendant that this contract was made by Walsh for the purpose of speculation, on the expected rise in value of the property. The abstract was certified to date, and was delivered to the attorney for Greene, in June, 1916, for examination. Defendant claims that Greene's attorney was, for the purpose of delay, instructed to raise all possible objections to title, and was advised that Walsh and Greene were not in any hurry. Certain objections were made to the title, and the defendant joined with others in procuring quitclaim deeds to clear up the defects. The defendant upon that subject testified as follows:

"The abstract was at the Security Trust Company and I directed the Security Trust Company to deliver the abstract to Mr. Walsh. I was afterwards informed by Mr. Walker that certain objections had been made to the title, and I remember going out Michigan avenue with Mr. Walsh and Mr. Walker in connection with clearing up the title. It was some time in July or August of 1916. The abstract was ready again the latter part of August or the first part of September.

"Q. The Security Trust Company was looking after property for you, was it?

"A. Partly."

In the meantime Walsh and Greene were trying to raise money to pay on the contract. On September 7, 1916, a deed was executed by the defendant to the plaintiff Greene, and the plaintiff Greene executed the mortgage and notes provided for in the contract. These papers were deposited with the Security Trust Company, the agent of the defendant in this transaction. Mr. Walker, the vice-president of the Security Trust Company, testified that the understanding was that the $19,000 was to be paid the next day. At the time the papers were executed Greene expected to go to a hospital for an operation,

and he accordingly went. He did not pay any money the next day. On September 18, 1916, Mr. Walker, vice-president of the Security Trust Company, who was acting as the agent of the defendant, wrote Mr. Greene, in care of the Saxon Motor Car Corporation, Detroit, the following letter:

"*Dear Sir:* I have just learned that you are liable to be confined to the hospital a little longer than you anticipated. Mr. Lieberman desires me to say that he is willing that this matter be left until you are able to attend to same, which we trust will be within a very short time."

This letter was signed by Mr. Walker as assistant secretary.

On September 24th, while still in the Harper Hospital, Mr. Greene wrote the following letter:

"LEWIS K. WALKER, Asst. Secy.,
    Security Trust Company,
      Detroit.
"*My dear Mr. Walker:* I thank you for your kind letter of September 18th, and ask that you kindly express to Mr. Lieberman my appreciation of his consideration and courtesy. My operation turned out rather more seriously than I had anticipated, and I was not in a mood to consider any business of great importance. I shall be out of here about Wednesday and shall see you some time Thursday sure. With my kindest regards, I am,
              "Very sincerely yours,
                "ARTHUR N. GREENE."

On leaving the hospital Greene went to his home in Ohio, and on October 2, at Fremont, Ohio, he wrote the following letter, addressed to Lewis K. Walker, Security Trust Company, Detroit:

"*Dear Sir:* I rather broke down after I left the hospital, and am now at my old home trying to get in shape to go on with my business. Today has been a pretty fair one for me, and I am in hopes of return-

ing to Detroit to settle up my business and then go away for a long rest. Will you please notify Mr. Lieberman and inform him that I shall be glad to pay proper interest on this delayed payment, which I sincerely regret. My Detroit address is 121 Alexandrine ave., West. I shall see that you hear from me within a couple of days. I am,

"Yours very truly,
"ARTHUR N. GREENE."

Thereafter Greene went west for the purpose of recovering his health, combining therewith a business trip for the Saxon Motor Car Company with which he was connected, and returned to Detroit about December 8, 1916. Nothing was heard from Greene until the latter part of October or first of November, when he sent a telegram to Mr. Walker, which telegram became lost and was not produced at the hearing. Mr. Walker's testimony was "the telegram saying he would give no answer until he returned." Mr. Walker testified that Mr. Greene, on December 8, 1916, at the office of the Security Trust Company in the presence of Mr. Lieberman, said that the party who was to furnish the money had died; that he had lost considerable of the money which he was to put in the proposition in dealing in Saxon stock and was unable to complete the transaction.

On December 12th, defendant Lieberman sent to Mr. Walsh, by registered mail, the following letter:

"DETROIT, MICH., December 12, 1916.
"JOHN J. WALSH, Esq.,
　　814 Penobscot Building,
　　　Detroit.
　"*Dear Sir:* Inasmuch as the balance due on the purchase price of my Michigan ave. property as described in the agreement of Apr. 29, 1916—has not been paid in accordance with the terms of the agreement, I do hereby declare you in default and the said agreement void.

"The $1,000 down-payment which was made when

negotiations were first entered into—together with the notes and mortgage executed by Arthur N. Greene Sept. 7, 1916, are now held by the Security Trust Company and will be returned to the respective owners upon delivery of the copy of the preliminary purchase agreement, duly cancelled and a proper receipt given covering the return of the deposit and the notes and mortgage.

"Very truly yours."

"Copy to Mr. Arthur          (Signed by the defendant.)
N. Greene, c/o Saxon Motor
Car Co., Detroit."

A copy of this letter was sent by registered mail to Arthur N. Greene, and presumably was received by him on that, or the succeeding date. That letter was accompanied by the following:

"DETROIT, MICH., December 12, 1916.
"ARTHUR N. GREENE, Esq.,
  c/o Saxon Motor Car Co.,
    Detroit.
"*Dear Sir:* I enclose herewith copy of my letter of today to Mr. John, J. Walsh—notifying him that I have declared the contract dated April 29th, for the purchase of my Michigan ave. property void, inasmuch as the payments have not been made in accordance with the terms thereof.

"Very truly yours."
(Signed by the defendant.)

On December 20, 1916, a tender was made for the plaintiff Greene of the amount due on the contract to that date to the Security Trust Company as agent for the defendant, and this tender was refused on the sole ground that the contract had been forfeited by the notice of December 12, 1916.

On January 5, 1917, the tender was renewed and again refused. Thereupon, after some negotiations looking to a settlement, the bill in the instant case was filed by Arthur N. Greene for the benefit of himself and one Otto C. Carpel, to whom he had previously assigned the contract in question, reserving, as he

claimed, to himself an interest therein. The bill of complaint was afterwards amended to include Otto C. Carpel as plaintiff, and after said amended bill had been filed both Arthur N. Greene and Otto C. Carpel died. The cause was then revived in the name of George Waller, administrator of the estates of Arthur N. Greene, deceased, and Otto C. Carpel, deceased, and a second amended bill was thereupon filed, naming therein as plaintiffs George Waller as administrator of the estates of Arthur N. Greene and Otto C. Carpel, and Max A. Carpel and Elizabeth Carpel, the sole heirs at law of Otto C. Carpel, deceased, to whom the interest of the said Otto C. Carpel in this contract had vested by virtue of the statutes of descent.

We are not satisfied from a perusal of this record that the objections made by Mr. Greene's attorney to the condition of the title were unreasonable or made in bad faith. In the light of the testimony of the defendant upon this subject, we are constrained to hold that the objections were reasonable and operated as a good excuse for the vendee's delay prior to September 7, 1916. It will be noted that the contract itself contained no provision making time of the essence thereof. In the absence of such a provision, time will not be held to be of the essence of the contract, under the circumstances shown in this case. We hardly need cite our earlier Michigan decisions upon this subject. A few, however, will be given: *Wallace* v. *Pidge*, 4 Mich. 570; *Bomier* v. *Caldwell*, 8 Mich. 463; *Morris* v. *Hoyt*, 11 Mich. 9; *Converse* v. *Blumrich*, 14 Mich. 109.

The defects in the title were cleared up satisfactorily to Mr. Greene about the first of September, 1916, and on September 7, 1916, the deed, mortgage and notes were executed and left with the Security Trust Company, with the understanding that the payment due was to be made the next day. Manifestly,

the contract was treated as in force at that time. The defendant testified as follows:

"*Q.* Friday, December 8th, yes. Now, during all that time from September 7th to December 8th, this deed and mortgage and notes were in the hands of Mr. Walker at the Security Trust Company?

"*A.* I believe so.

"*Q.* With the understanding that if Mr. Greene went in and paid his $19,000 he was to get the deed and you were to get the mortgage and notes, that is correct, isn't it?

"*A.* I believe so, yes, sir."

This record shows that the papers were never withdrawn from the Security Trust Company, and were in its possession at the time of the hearing. There is nothing in the written contract, or in the conduct of the parties, tending to establish the fact that time was of the essence of the contract, other than the naming of the due date; and it has been frequently held that the naming of a date on which the payment shall become due does not in itself make time of the essence of the contract. *Marussa* v. *Temerowski,* 204 Mich. 271; *Lozon* v. *McKay,* 203 Mich. 364; *Richmond* v. *Robinson,* 12 Mich. 193, 199; *Morris* v. *Hoyt, supra.*

Conceding that it was agreed that Mr. Greene should make payment on September 8, 1916, that agreement was waived by the act of the defendant Lieberman himself. Defendant's answer contains the following paragraph:

"Defendant admits that on or about the date mentioned in plaintiff's bill of complaint he did, through his agent, Security Trust Company, inform said plaintiff that he was willing that this matter be left until the plaintiff was able to attend to his affairs, but further states that in said letter it was urged that this matter be closed in a very short time."

There is no question that performance within the

time specified in the contract may be waived by oral or written agreement extending the time. *Kimball* v. *Goodburn*, 32 Mich. 10; *Hickman* v. *Chaney*, 155 Mich. 217; *Bugajski* v. *Siwka*, 200 Mich. 415.

In the last cited case we said:

"It was competent for the parties by oral agreement to extend the time originally stipulated in the contract for the payment of the instalment of principal thereof, and this agreement operated as a waiver of the vendor of the right to rescind, or forfeit the contract for the failure of the purchaser to comply strictly with the terms thereof, relating to payments. 39 Cyc. p. 1393, and cases there cited in note, including *Ortmann* v. *National Bank*, 49 Mich. 56."

Having extended the time for the payment of the instalment of $19,000, defendant waived the right to rescind or forfeit the contract for failure to comply strictly with the terms thereof relating to payment.

Defendant attempted to terminate the contract by the notice or letter of December 12, 1916. This notice was a statement declaring John J. Walsh in default and that the agreement was void. It did not fix any time in which the plaintiff should make the payment then due, or forfeit his rights. There is much force in the claim of plaintiffs that this notice was not effective, because it did not give to plaintiff Greene a reasonable time in which to make the payment on the contract. It may be said that the notice given was ineffectual to terminate the contract, primarily because it was based on the failure to pay the balance due in accordance with the terms of the agreement which had been waived by the defendant, and it did not fix any time for payment.

In *Wallace* v. *Pidge, supra,* at p. 573, it is said:

"If the vendee continues in possession under the agreement long after the time specified therein for giving the deed, a court of equity may consider a strict performance at the day as waived, and a party who has thus waived a literal performance of the

terms of the agreement, will not afterwards be permitted to insist upon a forfeiture without notice to the other party, and giving him a reasonable time to perform on his part." Citing *Edgerton* v. *Peckham*, 11 Paige Ch. (N. Y.) 352; *Avery* v. *Kellogg*, 11 Conn. (2d Ed.) 562; *Tyree* v. *Williams*, 3 Bibb (Ky.), 365.

In the last cited case it is said:

"Where a time is fixed for the performance of a contract, it is at law considered to be the essence of the contract; but, unless the parties expressly stipulated that it shall be so, it is otherwise considered in a court of equity; and its execution will be decreed notwithstanding the time has elapsed for its performance, unless there has been a culpable negligence, a wilful delay on the part of him who is seeking the aid of a court of equity."

2 Story's Equity Jurisprudence (14th Ed.), § 1064, and English authorities.

In 39 Cyc., at page 1384, we find the following language:

"Where Strict Compliance With Contract Has Been Waived. Whether time is or is not of the essence of the contract, if the vendor has waived strict compliance with its terms as regards time of payment, he cannot thereafter rescind or forfeit the contract, without notifying the purchaser of his intention to do so unless payment is made, and allowing him a reasonable time for performance, and it has been held immaterial whether the extension of time was upon a valuable consideration or not. After forfeiture for default has been waived, time becomes essential thereafter only where the vendor makes it so by proper notice and demand. The decisions proceed upon the theory that the vendor 'cannot use his own indulgence as a trap in which to catch the purchaser!'"

In 1 Sugden on Vendors (8th Am. Ed.), p. 413, the rule is thus stated:

"Where time is not made of the essence of a contract by the contract itself, although a day for per-

formance is named, of course neither party can strictly make it so after the contract, but if either party is guilty of delay, a distinct written notice by the other that he shall consider the contract at an end if it be not completed within a reasonable time, to be named, would be treated in equity as binding on the party to whom it is given; but a reasonable time must be allowed."

In *Foland* v. *Italian Savings Bank*, 108 N. Y. Supp. 57, the court said:

"A letter by vendor to vendee, written after the time fixed for closing title, that he must make an additional payment, or otherwise vendor would offer the property for sale, was insufficient to constitute notice of the time and place of closing title, so as to make time of the essence and put vendee in default, since it fixed no definite time either for closing title, or for payment of the additional sum."

We cite further cases as follows: *Treat* v. *Railway*, 157 Mich. 320, 325, and cases there cited; *Bullock* v. *Adams*, 20 N. J. Eq. 367; *Oakey* v. *Cook*, 41 N. J. Eq. 350; *Carroll* v. *Mundy & Scott*, 4 A. L. R. 811 (185 Iowa, 527, 170 N. W. 790), and cases cited under notes 2 and 3.

In the light of these authorities we think it should be said that the notice of December 12th did not operate to terminate the contract relations between Greene and the defendant, and that on the tender of December 20th it became the duty of defendant, as a matter of law, to deliver the deed to the plaintiff Greene.

But it is claimed by the defendant that the contract was canceled or surrendered by mutual consent on December 8th, when it is claimed that Greene stated to Lieberman and Walker, in the office of the Security Trust Company, that he was unable to complete the transaction. In the light of this record showing the conduct of the parties on that and succeeding days, we

think that what occurred was not sufficient to operate as a release by the parties to the contract of their mutual obligations thereunder. In our opinion the statute of frauds would require such release or surrender to be in writing, unless there was a surrender or release by operation of law, which we think cannot be successfully claimed here. Section 11975, 3 Comp. Laws 1915, reads as follows:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing."

This statute has been construed by this court in a number of instances.

In *Grunow* v. *Salter*, 118 Mich. 148, it was held that the interest of contract purchasers in land cannot be surrendered by parol. The following additional cases may also be cited: *Whiting* v. *Butler*, 29 Mich. 122, 144; *McEwan* v. *Ortman*, 34 Mich. 325; *Stewart* v. *McLaughlin's Estate*, 126 Mich. 1.

The instant case is readily distinguished from that of *Stevens* v. *Wakeman*, 213 Mich. 559. In that case, by reason of a long course of conduct wholly inconsistent with the terms of the contract, we held that there was a release, or surrender, by operation of law. In this case, conceding that the statement was made by Greene as testified to by the witness Walker, and that his testimony was competent upon that subject, nothing seems to have been done relying upon such statement. None of the papers,—neither the contract nor papers in escrow,—was delivered in pursuance of any such arrangement, and we find the defendant pro-

ceeding four days later, to give notice attempting to nullify the contract because of the nonpayment of the $19,000 then past due.

Spending no time on the question of the mortgage tax not having been paid at that time, or the claim that the mouth of the witness Walker was closed by reason of the death of Mr. Greene, we are of opinion that what occurred on December 8th did not operate as a surrender, or cancellation, of the contract. In the letter to Mr. Greene containing the copy of the notice of claimed forfeiture, there was no intimation of any change in the relations of the parties. Within one week after the letter was delivered to Greene he made a tender of the sum due upon the contract. Such tender was refused; not upon the ground that it had been released by oral arrangement, but upon the ground that the contract had been forfeited by notice. This tender was repeated on January 5, 1917, with a like result. If we were to assume even that Greene's rights under the contract were subject to forfeiture, and the notice of December 12th was in proper form, these facts would not finally determine the rights of the parties, and plaintiff may still be entitled to relief.

In the case of *John* v. *McNeal*, 167 Mich. 151, this court, speaking through Justice BLAIR, said:

"The fact that complainant's rights under the contract were subject to forfeiture by law, and that defendant's entry was lawful, does not finally determine the rights of the parties. It is the province of a court of equity to grant relief in just such cases. As said in *Hodges* v. *Buell*, 134 Mich. 162:

" 'We have repeatedly held that equity will not render aid in enforcing forfeitures, but will interpose to relieve from them.' "

See, also, *Cornell* v. *Norton*, 188 Mich. 187; *Curry* v. *Curry*, 213 Mich. 309; *Marussa* v. *Temerowski*, *supra*; *Lozon* v. *McKay*, *supra*; *Munro* v. *Edwards*, 86 Mich. 91, 95, and cases there cited.

The doctrine of this court is well expressed by Justice COOLEY in the early case of *Smith* v. *Lawrence,* 15 Mich. 499, 501. That eminent jurist there said:

"Specific performance of contracts must always rest in the sound discretion of the court, to be decreed or not, as shall seem just and equitable under the peculiar circumstances of each case. It is frequently ordered in favor of a party who has been for a considerable period in default, if he has never abandoned the contract, and the other party has suffered nothing from the delay for which he cannot be compensated in the decree."

There is no evidence in this case of any fraud, or overreaching in the making of the contract. There is no evidence that the property had increased in value, either at the time the tender was made and refused, or at the time of the hearing; nor is there any circumstance shown that would render it inequitable to have the contract specifically performed.

In *Hager* v. *Rey,* 209 Mich. 194, 204, after referring to the language used in *Solomon* v. *Shewitz,* 185 Mich. 620, we said:

"Adhering to the above language, it may also be said that specific performance of a contract for the purchase of real estate may not be arbitrarily refused, but in the exercise of a sound legal discretion should be granted, in the absence of some showing that to do so would be inequitable."

The rule is well stated in 25 R. C. L. at page 217, as follows:

"Broadly speaking, whenever a contract is in writing, is certain in its terms, is for a valuable consideration, is fair and just in all its provisions, and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance as for a court of law to award damages for its breach."

See cases there cited.

Counsel for defendant sharply criticize the conduct of Greene and Walsh, and it is claimed that the contract was not made in good faith. It is said that it was made for speculative purposes. If we were to deny specific performance of every contract for the purchase of land made for speculative purposes, but few decrees for specific performance would be granted, for, as a rule, purchasers of real estate buy property in good faith frequently with the intention of selling it again at a profit. That the making of the contract was in good faith we think affirmatively appears in the record. Nor do we think there was any effort on the part of Greene and Walsh to have the attorney withhold his examination and report for the purpose of delay. The testimony of the witness Walsh, taken four years after the transaction, was very indefinite and somewhat unsatisfactory. Referring to the instructions to the attorney this question was asked:

"*Q.* Who did give him instructions? That is what I am asking now. Did you give Mr. Gibbons instructions or did Mr. Greene?

"*A.* Whether or not I gave those instructions I cannot remember just now. I might have suggested that we were not in a hurry."

Counsel for defendant refer to the case of *Lake Erie Land Co.* v. *Chilinski*, 197 Mich. 214, where specific performance was refused, it appearing, among other things, that the vendee had entered into the contract "without any *bona fide* belief on his part that he could swing the deal unless something turned up, or he might succeed in transferring his contract to other hands." An examination of that case will show that it is readily distinguished from the instant case. That was an extreme case. The contract was procured by misrepresentation, and was unconscionable. The party there was dealing with inexperienced for-

eigners, unskilled in business, with no one to protect their rights.

But it is urged that Greene had to borrow money or interest another party in getting hold of funds sufficient to make the tender. Where he got the money with which to make the tender, we think, is unimportant.

In *Marussa* v. *Temerowski, supra,* this court, speaking through Justice FELLOWS, said:

"Whether the money to make the tender was furnished by plaintiffs themselves, or was advanced by one who expected to purchase of them after they had acquired title, is unimportant."

And in *Curry* v. *Curry, supra,* where the tender was made as here, about one week after the notice of forfeiture, the plaintiff got the bank to make the tender for him. We think the matter entirely unimportant.

We have not overlooked the numerous questions argued by counsel for defendant, nor the authorities cited. We have read with great care the sections cited by counsel from Pomeroy on Specific Performance, especially the following in section 409:

"A court of equity will not aid a vendee who has delayed in making the payments required by contract, if his delay was caused by his actual pecuniary inability—that is, if when he made the agreement he was unable to pay, and had no reasonable ground for supposing that he would be able to comply with the terms of the contract at the stipulated time. A purchaser who thus enters into an agreement knowing his inability to fulfill, is not dealing honestly or justly with the vendor, and equity will not relieve him from a default which was thus inevitable, and which placed the vendor in a position of disadvantage from the very beginning. And if the vendor fails to perform on his part, at the stipulated time, and the contract is inequitable, or the price exorbitant—or, on the other hand, if the vendee fails in like manner, and the price is inadequate—in either case the party de-

laying cannot enforce specific performance on the other."

We are unable to say that Greene had no reasonable ground for supposing that he would be able to comply with the terms of the contract at the stipulated time. He is not the first person who has contemplated the purchase of property with a view of turning it over, or selling it, intending thereby to make "his ends meet." It cannot be said that he entered into the agreement knowing his inability to fulfill. His judgment may not have been good. The facts remain, however, that he made a substantial payment of $1,000 when the contract was signed. He has tendered the sum of $19,000 within a week of the time when forfeiture was sought by notice, and, considering all of the circumstances surrounding the case, we see no reason why specific performance should not be enforced. The instalments are now all past due. The taxes have been paid by the defendant, as we gather from the evidence. The defendant must be reimbursed for the taxes which he has paid since the date of the contract, with interest thereon. The instalment of $19,000 should draw interest at 6 per cent. from September 7, 1916, the remaining moneys to draw interest from the date of the contract at the rate of 6 per cent. per annum, such interest to be computed as payable semi-annually according to the contract. These sums should all be paid to the defendant within 60 days from the date of the filing of this opinion.

The decree below will be reversed and one entered in this court in accordance with this opinion. The amount of taxes, and interest may be determined on the settlement of the decree. Plaintiffs will recover their costs to be taxed.

STEERE, C. J., and WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.