PONTIAC NURSERY CO. *v.* MILLER.

1. FRAUDS, STATUTE OF—LANDLORD AND TENANT — SURRENDER OF REQUIRED WRITTEN LEASE MUST BE IN WRITING.
   Under the statute of frauds (3 Comp. Laws 1915, §§ 11975, 11977), a written lease for a period of more than one year may be surrendered only by a conveyance in writing.[1]

2. SAME—ORAL AGREEMENT TO SURRENDER WRITTEN LEASE VOID.
   An oral agreement for the surrender of a written lease for a period of more than one year being void under the statute of frauds, an oral agreement to put said void oral agreement in writing is also void.[2]

3. SAME—ORAL AGREEMENT TO PUT IN WRITING VOID ORAL AGREEMENT ALSO VOID.
   An oral agreement to put a void oral contract in writing has no greater validity than the contract to which it relates.[3]

Error to Oakland; Covert (Frank L.), J.     Submitted January 8, 1926.     (Docket No. 79.)     Decided December 8, 1926.

Assumpsit by the Pontiac Nursery Company against Frank P. Miller for breach of a contract for the extension of a lease.     Judgment for plaintiff.     Defendant brings error.     Reversed.

*Albert McClatchey* and *Firmon Lush* (*Harry J. Weber,* of counsel), for appellant.

*Benjamin S. Pagel,* for appellee.

STEERE, J.     Plaintiff is a corporation engaged in the business its name implies.     On November 10, 1914,

---

[1]Frauds, Statute of, 27 C. J. § 193; [2]Id., 27 C. J. § 422; [3]Id., 27 C. J. § 422.

it leased from the owners, Nellie and John Winn, the following described land located in Oakland county near the city of Pontiac:

"The farm known as the Winn farm, on sections three and four in said township of Bloomfield, being on east side of Saginaw turnpike and containing fifty acres more or less.    Parties of the first part reserve the wood lot."

Exclusive of the wood lot, the Winn farm consisted of about 55 acres of cultivated land with customary farm buildings upon it.    It was near plaintiff's main nursery and place of business and was leased by it for use in that connection.

The written lease was in short form, for a "term of 5 years with privilege of 10 years from and after the 30th day of November, 1914."    The place was to be "occupied for farm and nursery purposes."    The specified rent was $550 per annum "Payable semi-annually, viz.:  Two hundred and seventy-five dollars at the date hereof, and two hundred and seventy-five dollars each June and December, during the continuance of this lease."    The instrument also contained the customary provisions as to quiet enjoyment, right of re-entry, eviction of lessee in case of default, etc. During the first five years plaintiff occupied and used the place for the purpose provided, regularly paying its rent to the lessors as specified.    Its secretary and manager, Bert J. Manahan, testified that in 1919 the 55 acres "was in all kinds of nursery stock," consisting of about 10,000 trees of various kinds with a large block of different varieties of shrubbery.

Defendant Miller was engaged in the real estate business in and around Detroit with an office in the Free Press building.    In July, 1919, he purchased the Winn farm from plaintiff's lessors, receiving from them a warranty deed of the property and giving back thereon a mortgage for deferred payments on the

purchase price.   Exact date of the deed, the purchase price, amount and terms of the mortgage are not shown.   Although he said he had been in the real estate business for many years platting subdivisions, buying, selling, etc., he did not ask of his grantors, or obtain, any abstract of title to the property nor make any inquiry of plaintiff, then in open possession, as to its rights.   He knew plaintiff was in possession but explained that he was "given to understand" by Winn that it was to occupy the property until November 30, 1919, "at which time they would get off." He testified he bought the farm for subdividing purposes and after purchasing it the "first thing I did, I engaged an engineer to survey the property."   He was interested in an adjoining property called the Fischer farm which he was subdividing and proposed to combine its platting with that of the Winn farm.

The Pontiac Nursery Company did not get off on November 30, 1919, but, learning in various ways of defendant's purchase and claimed right to possession, wrote him as follows on October 1, 1919:

"We beg to advise that there seems to be some misunderstanding about the lease we have on the Winn farm at Pontiac.

"We have an option of five additional years from November 30, 1919, which is in accordance with written lease given us on November 30, 1914.

"We have too much stock on this property to move out and sacrifice at this time and unless an arrangement can be made whereby we can let some of this stock stand where it is for the next one or two years, it will be necessary for us to exercise this option and continue in possession of the property.

"As our transplanting and digging season is starting now it will be necessary for us to know immediately just what you are going to do so we can make our plans accordingly.

"We will be glad to get together with you at any time before the next week and go over this matter

236—Mich.—33.

so we will know just what arrangements you are going to make."

Miller admitted receiving that letter and ignoring it. Asked on cross-examination if when he received it he went to them and asked to see their lease, he replied:

"No, I had no dealings with the Pontiac Nursery, I went to Mr. Winn. * * * I had a deed from Winn, free and clear."

On November 26, 1919, plaintiff wrote and sent to the Winns and Miller by registered mail the following notice:

"This is to notify you that the Pontiac Nursery Company desires and intends to exercise their option of five additional years starting December 1, 1919, on the property known as the W. J. Winn farm, Pontiac, Michigan.

"This is in accordance with lease given by Nellie J. Winn and J. W. Winn, November 10, 1914.

"If you will notify me who the owners of this property are, we will be very glad to pay our rent according to terms of lease when same becomes due."

Neither Miller nor the Winns replied to this communication. In the meantime, and later, various things transpired touching the property, as to portions of which the testimony of the parties is in marked conflict.

This action was commenced by plaintiff on March 27, 1924, apparently about the time defendant had obtained against it a judgment of restitution for possession of the premises in summary proceedings before a circuit court commissioner. Its declaration contains the common counts in assumpsit preceded by a lengthy special count based on an alleged oral contract between the parties as to possession of the property and defendant's failure to reduce the same to writing, as he had agreed to do, and performance

of said contract on plaintiff's part.   The items in its bill of particulars are as follows:

"Nov. 30, 1919.   To taking up, transport-
ing and planting forty-two hundred nursery
trees at 50 cents per tree..................$2,100.00
   Nov. 30, 1919.   To loss of same due to
transporting 400 trees at $1.25 per tree....   500.00
   October, 1920.   To loss of crop for growing
season of 1920........................   500.00
   To nursery stock purchased in fall of 1920
and spring of 1921......................   514.25
   Interest on above amounts at five per cent."

The first three items are for work and loss in performance by plaintiff of the alleged oral contract set out in the special count, around which this controversy centers.   Introductorily that count describes and attaches as an exhibit plaintiff's lease with the Winns of November 10, 1914, and then states:

"That thereupon plaintiff entered into possession of the said premises and continued in such possession throughout the term of the said lease, and for a further period of, to-wit, four years, by virtue of the provisions of the said lease which permitted a renewal by it of the term thereof."

It then relates in substance that in September, 1919, it learned the Winns had sold the property covered by its lease to defendant who desired possession of it before November 30, 1919, and plaintiff notified him of its intent to avail itself of the additional five-year period following that date.   In the meantime defendant had represented that pursuant to his plan to plat the property it was of great importance that he secure possession that fall, resulting in an oral agreement made in the fall of 1919, between plaintiff by its secretary and general manager Manahan, and defendant Miller, stated in said count as follows:

"That when defendant's attention was called to the provisions of the lease which gave plaintiff the right to renew same for a further period of five years, he

expressed great surprise, but thereafter did not controvert plaintiff's right to such renewal. That thereupon defendant proposed to plaintiff that it retain possession without rent of, to-wit, five acres of the said farm for a further period of two years or until such time as plaintiff could remove the balance of its stock from the said five acres, and in consideration thereof, surrender possession of the balance of said premises and remove therefrom such nursery stock as was then growing upon same.

"*Sixth.* That thereupon plaintiff agreed to such proposal and asked defendant to reduce same to writing, which defendant thereupon agreed to do; that pursuant to the terms of the said agreement, plaintiff immediately began to remove from the said farm its said nursery stock, consisting of, to-wit, 4,200 growing trees and at the same time permitted defendant to go upon the said premises and survey and stake same for subdivision purposes; that said nursery stock was removed from said farm by plaintiff before the 30th day of November, 1919, and that during the time that the said nursery stock was being removed from the said farm, defendant repeatedly promised plaintiff to reduce the said agreement to writing."

Defendant pleaded the general issue, with special denial that he ever "entered into any contract or agreement of any kind with the plaintiff in relation to the said land, and that the said lease was the only contract between the parties hereto in relation to the said land." That plaintiff was still in possession thereof under said lease but had paid no rent on the term beginning November 30, 1919, for the amount of which he asked a judgment in his favor with interest amounting to $2,475 with interest, and also for the further sum of $275 which would fall due under the lease on June 1, 1924.

Upon the trial plaintiff's bill of $514.25 for nursery stock was conceded and it was admitted plaintiff had paid no rent under the lease upon the second five-year period. Plaintiff's proof of the oral agreement upon which its action is based is the testimony of its secre-

tary and manager Manahan, who testified it was made early in October, 1919, at Miller's office, where he went to interview him on the subject.   That its terms, stated in substance as detailed in the declaration, were fully discussed and agreed upon then and there, Miller at the same time agreeing to furnish the same to plaintiff in writing; that twice before November 30, 1919, he again asked Miller to put it in writing and he promised to do so immediately, stating as his excuse for delay that he had been out of town or busy.

Miller positively denied any such meeting or agreement, said he did not know Manahan at that time and first met him at the Fellowcraft Club some time during the following winter; that he never at any time made any agreement with the nursery company or any one connected with it with reference to their giving up a portion of that land and retaining a portion.

When it finally dawned upon Miller that the lease contained the provision which he at first denied and the property was tied up for five years longer, serious differences arose between him and the Winns who he claimed had cheated and defrauded him.   He refused to recognize the purchase-price mortgage he had given them or make any further payments on it, and their differences culminated in foreclosure proceedings when the first installment fell due.   He answered with cross-bill asking affirmative relief.   That litigation dragged along until the latter part of 1923, when, as Miller testified, he made a satisfactory settlement with the Winns and then asked plaintiff to pay the four years' back rent due on the lease, deducting its bill of $514.25 for nursery stock which he had purchased of it, which plaintiff refused to do until Miller settled up a claim for damages it had against him for breach of his oral agreement to put their otherwise void oral contract as to the lease in writing, which he said "was the first time I ever heard of this claim."

. Passing from the conflicting oral testimony it also is shown that on November 27, 1923, plaintiff wrote Miller as follows:

"On November 30, 1923, four years of our five-year lease on the Winn farm will have expired and as our farm crops have now been harvested and as the amount of material we have on the property is at low ebb and as the expense of our moving at this time will be the lightest of any time during the year, we would be pleased to consider any proposition that you wish to make as to us giving up the use of this property for the coming year December 1, 1923, to November 30, 1924."

On December 3, 1923, Miller replied to this letter, by his attorney, as follows:

"Answering your letter of November 27th to Mr. Frank P. Miller, all Mr. Miller wants is the rent due him.    When you pay that, undoubtedly he will release you for the balance of the term if you so desire."

Manahan's testimony as to this alleged agreement was admitted, and submitted to the jury against defendant's objection, motion to strike out, etc., resulting in a verdict and judgment in plaintiff's favor for $1,000.    Motion for a new trial was denied.

But one proposition in defendant's various assignments of error need be considered.    It is in substance that the alleged oral agreement of October, 1919, to cancel or change the terms of the written lease under which plaintiff was in possession of the property was void under the statute of frauds and the indirect effort to vitalize it by proof of an oral agreement to subsequently put it in writing was equally invalid. Incidentally, Manahan, who represented plaintiff in that transaction, said he "knew that an agreement of that kind should be in writing," and he knew it had not been put in writing when on November 26, 1919, he sent written notice of plaintiff's intention to exercise its option and continue the lease for five additional

years, offering to pay the rent when advised whom to pay it to.    The Winns' deed to Miller and his mortgage to them were then of public record.

No question of taking or holding possession under any oral agreement is involved.    Plaintiff was in possession, use and enjoyment of the whole 55 acres under its written lease and remained so until evicted for nonpayment of rent.    It so states in substance in its proposal of October 1, 1919, its notice of intention to continue and offer to pay rent of November 26, 1919, its proposal of November 27, 1923, and covers the entire nine years in the quoted paragraph of its declaration so stating.    It made no improvements on the property pursuant to the alleged oral agreement which enhanced its value or inured to the benefit of defendant.    Its written lease was a vested estate or interest in land for a period of more than one year, which under our statute of frauds could only be created, granted, assigned or surrendered by a conveyance in writing subscribed by the party granting, assigning or surrendering the same (3 Comp. Laws 1915, §§ 11975, 11977; *Waller* v. *Lieberman,* 214 Mich. 428, and cases there cited).    Mere failure or neglect to perform the alleged oral agreement to put the then void oral contract in writing was not, standing alone, fraudulent (*Funk* v. *Engel,* 235 Mich. 195).

We are of opinion that, taking plaintiff's testimony as true, the proper rule is that the oral agreement to put the void oral contract in writing had no greater validity than the contract to which it related.    A contrary rule would in effect defeat the purpose of the statute of frauds.    In the comparatively recent case of *Falk* v. *Devendorf,* 172 Wis. 10 (177 N. W. 894), where it is held that the oral agreement of a landlord to subsequently execute a writing to give validity to his oral lease for three years was void, the rule and reason therefor are thus clearly stated:

"So much, however, of such agreement as purports to grant defendant any right to possession after the expiration of such first year is manifestly within the statute of frauds (secs. 2302, 2304, Stats.), and was correctly so held (citing cases). The oral agreement for the subsequent execution of a writing which would give validity to that which without such writing is void under the statute of frauds, was likewise void (citing cases). To hold otherwise would pave the way for a practical abolishment of such provision in the statute of frauds."

The judgment is therefore reversed, with costs to defendant, and a new trial granted.

Bird, C. J., and Sharpe, Snow, Fellows, Wiest, Clark, and McDonald, JJ., concurred.