## PULLING *v.* SCHREIBER.

1. MORTGAGES — FORECLOSURE—NOTICE OF SALE SUBJECT TO RE-
   SERVED BID PERMISSIBLE UNDER ONTARIO LAWS.

   Notice of sale of mortgaged premises, in Ontario, under
   the power conferred by the mortgages, subject to a re-
   served bid, is permissible under the Ontario foreclosure
   laws and practice; the amount of the reserved bid being
   the sum then due for principal and interest on the mort-
   gages, and if such amount is. not offered no sale is had,
   but the assumption that the reserved bid is a *bona fide*
   one for the property is not warranted.

2. PRINCIPAL AND SURETY—BOND TO SECURE REDUCTION OF MORT-
   GAGES—PAYMENTS ON PRINCIPAL CREDITED ON BOND.

   Where it is apparent that the intent with which a bond
   for $20,000 was given by mortgagors to the mortgagee was
   to secure reduction of mortgages to an amount for which
   the mortgagee deemed them sufficient security, it will be
   so construed, although it does not explicitly so state,
   and payments on principal should therefore be treatéd as
   a reduction of liability on the bond.

3. SAME—OBLIGATION TO PAY INTEREST AS WELL AS PRINCIPAL ON
   . PART OF BOND UNPAID.

   Under the obligation in the bond, the principals not only
   undertook to see to it that the mortgage indebtedness
   was reduced by $20,000, but also to see that interest on
   this amount was duly paid, and therefore they are charge-
   able with interest on all that part of said amount un-
   paid from time to time as it matured.

4. MORTGAGES—INTEREST—LAWFUL RATE UNDER ONTARIO LAWS.
   Under the Ontario law (Rev. Stat. Ont. 1906, chap. 120),
   interest on mortgages at the rate of seven and one-half
   per cent. is not unlawful.

   ---

   [1]Mortgages, 41 C. J. § 1436; [2]Bonds, 9 C. J. § 52; [3]Id., 9 C. J.
   § 64; [4]Interest, 33 C. J. § 90.

5. PRINCIPAL AND SURETY—SURETY RELEASED BY EXTENSION OF TIME ONLY WHEN DEBTOR IS ONE AGAINST WHOM PAYMENT MAY BE ENFORCED.

The rule that a valid and binding agreement with a debtor to grant an extension of time for payment will relieve a surety is in operation only when the agreement is made with a debtor from whom payment can be demanded and enforced.

6. SAME—EXTENSION OF TIME TO PURCHASER OF LAND NOT ASSUMING MORTGAGE DEBT DOES NOT RELIEVE SURETIES ON BOND.

One who purchased premises subject to mortgages, but did not assume or agree to pay them, is not a debtor against whom payment could be enforced, and therefore extension of time granted him for payment of mortgages did not release the sureties on the bond given by the mortgagors obligating payment thereof according to the terms of the mortgages.

7. SAME—JUDGMENT NISI DOES NOT RELIEVE SURETIES ON MORTGAGORS' BOND WHERE MORTGAGEE LATER ELECTED TO PROCEED UNDER POWERS OF SALE IN MORTGAGES.

Where, in a suit to foreclose mortgages, a judgment *nisi* was entered on default, but later, on recital that the mortgagee had elected to proceed under the powers of sale contained in his mortgage instead of proceeding to final foreclosure, an order of discontinuance was entered, the obligation of the sureties on the mortgagors' bond was not extinguished thereby.

8. SAME—PRIVATE SALE OF MORTGAGED PROPERTY VALID IN ABSENCE OF FRAUD OR COLLUSION.

Where the mortgagee made every effort to so dispose of mortgaged property under the powers of sale contained in the mortgages and authorized by the Ontario statutes regulating foreclosures, at private sale, so as to save harmless the sureties on the mortgagors' bond, they may not complain because the property brought less than the mortgages, in the absence of fraud or collusion between the mortgagee and the purchaser.

Error to Wayne; Warner (Glenn E.), J., presiding. Submitted April 6, 1927.     (Docket No. 30.)     Decided October 3, 1927.     Rehearing denied February 14, 1928.

[5]Principal and Surety, 32 Cyc. p. 191; [6]Mortgages, 41 C. J. §§ 757, 761; [7]Principal and Surety, 32 Cyc. p. 153 (Anno); [8]Mortgages. 41 C. J. §§ 1416, 1490.

Assumpsit by William J. Pulling against Nathan Schreiber and others on a bond.    Judgment for plaintiff.    Both parties bring error.    Remanded.

*Campbell, Bulkley & Ledyard (Henry Ledyard* and *Harold R. Smith,* of counsel), for plaintiff.

*Shapero & Shapero (Harold M. Shapero* and *J. Shurly Kennary,* of counsel), for defendants.

SHARPE, C. J.    In 1919 and 1920 Barney Mechanic and Jacob Lopatin erected a building in the village of Sandwich, Ontario, in which were a theater, three stores, a dance hall, and four living apartments.    The cost of the building and the land on which it stood was about $70,000.    They executed three mortgages thereon to plaintiff, a resident of 'Sandwich; one for $15,000 on September 5, 1919; another for $30,000 on April 20, 1920, and another on November 8, 1920, for . $20,000.    This last mortgage recited that the amount of the two former mortgages was then $30,000 and the total amount of the mortgage indebtedness $50,000. In it Fred Lopatin was also named as a mortgagor. On November 8, 1920, the above named owners conveyed the property to the defendants herein, residents of Detroit, for an expressed consideration of "one ($1.00) dollar and other valuable considerations," subject to a mortgage indebtedness to plaintiff of $50,000, which defendants as grantees assumed and agreed to pay.    On the day this deed was made, the defendants executed to the plaintiff a bond in the penal sum of $20,000, conditioned as follows:

"The condition of this obligation is such that if the above bounden Nathan Schreiber, Samuel Goldberg and George Feldman, or any of them or his or their heirs, executors and administrators, shall well and truly pay or cause to be paid to the above named William J. Pulling, his executors, administrators or

assigns, the sum of twenty thousand ($20,000) dollars, principal, with interest thereon at the rate of seven and one-half per cent. per annum in accordance with the provisions contained in three several mortgages (those mentioned above being particularly described) then this obligation shall be void but otherwise shall remain in full force and virtue."

On June 4, 1921, the defendants for an expressed consideration of "One ($1) dollar and other good and valuable considerations" conveyed the premises to Morris Canvasser, Samuel Soltar and Joseph Fidler, of Detroit, subject to the three mortgages, on which there was then covenanted to be due $48,247.81, and which the grantees assumed and agreed to pay. On July 13, 1921, these grantees executed a similar conveyance to Samuel Hamberger, of Detroit, and on August 25, 1921, Hamberger executed a deed of the premises for a like consideration to Frank A. Wetsman, of Detroit, subject to said three mortgages to plaintiff. These deeds were all recorded by Wetsman on November 1, 1921. The affidavits of value annexed thereto, on which the land transfer taxes were paid, fixed a value thereon, which included the amount due on the mortgages, of $51,247.81, $49,747.81 and $49,747.81, respectively. It may be here noted that Jacob Lopatin, one of the original grantors, testified that he negotiated the several sales, and that the defendants paid $100,000 for the property and sold it for $105,000, and that Wetsman paid $85,000 for it.

Proceedings to foreclose the mortgages were taken by plaintiff in 1923 and 1924, but no sale was made. On May 21, 1925, the premises were sold at private sale by plaintiff to John A. McLean for the sum of $30,000. In the meantime, plaintiff had commenced this action to recover on the bond executed by defendants. It came on for trial in December, 1925. Both parties moved for a directed verdict. The motion of plaintiff was granted, and a verdict rendered for

$26,485.88.    On motion for judgment *non obstante veredicto,* the verdict was reduced to $20,000, the interest being eliminated.    Both parties review by writ of error.

1. Reserved Bid.    In August, 1924, plaintiff caused notices to be posted for a sale of the premises under the power conferred by the mortgages.    The notice provided:    "The property will be offered for sale subject to a reserved bid."    The amount of this reserved bid was the sum then due for principal and interest on the mortgages.    Such an amount not having been offered, no sale was had.    Defendants' argument as to this is based upon the assumption that the reserved bid was a *bona fide* one for the property. Sales are frequently thus made in this country under orders of the courts, and are permitted under the Ontario foreclosure laws and practice.

2. The Bond.    Defendants' liability on the bond was conditional on the payment by them to the plaintiff of the sum of $20,000 "in accordance with the provisions contained in three several mortgages," specifically described as above stated.    The mortgage first executed was to secure the sum of $15,000. It was made payable in monthly installments of $200, with interest at the rate of $7\frac{1}{2}$ per cent.    In it the mortgagors covenanted to apply all rents received in making such payments, and provided that in case of default in the payment of principal or interest the plaintiff might at his option declare the whole amount due and payable.    The second mortgage was executed to secure the sum of $30,000.    It provided for monthly payments of $450, interest at the same rate, and a similar provision if default be made.    In the third mortgage for $20,000, it was agreed that the total indebtedness on the three mortgages was $50,000.    It provided for payments on such indebtedness of the

240—Mich.—22.

sum of $600 per month, with interest at the same rate, to which all payments should be first applied, and that, in default of the payment of the interest, the principal should become payable.    This last mortgage was executed on the date the defendants purchased the property.    The building had then been completed. All of the money was loaned to aid in its construction. The plaintiff received monthly payments of $600 from December 10, 1920, to August 30, 1921, and also on the latter day a check for $1,783.42, presumably on interest.    Certain payments were made in 1922, 1923, and 1924, which are unexplained, but apparently were made on interest due and for insurance paid by plaintiff.

It is defendants' claim that in any event these payments should be credited against their liability on the bond.    It is apparent that when plaintiff advanced the money secured by the last mortgage, thus increasing his mortgage interest to $50,000, he was apprehensive that his loan was not well secured.    The purpose of the bond was to give him additional security to the amount of $20,000.    We are impressed that, while the bond does not explicitly so state, such was the intent, and that it should be so construed.    Its purpose was not to secure payment of the entire indebtedness, but to secure the reduction thereof to an amount plaintiff deemed the mortgages a sufficient security therefor.    These payments of principal should therefore be treated as a reduction of defendants' liability on the bond to that amount.

In the bond defendants also obligated themselves to pay "interest thereon at the rate of seven and one-half per cent. per annum in accordance with the provisions contained in three several mortgages."    They thereby undertook, not only to see to it that the mortgage indebtedness was reduced by $20,000, but also to see to it that the interest on this amount was duly paid.

The rate was not unlawful under the Ontario law. Rev. Stat. Ont. 1906, chap. 120.

We can see no reason why defendants should not be chargeable with interest on all that part of the $20,000 unpaid from time to time as it matured.    For the same reason that credit is given for all sums paid as principal on the mortgage, so interest payments made should be applied on the interest due on the $20,000 from time to time to the amount necessary to satisfy the same.    To make this clear: it appears from Exhibit 20 in the record that $5,400 was paid from December 10, 1920, to August 30, 1921, and that of this amount $2,747.10 was applied on interest and $2,652.90 on principal.    The indebtedness of defendants became thereby reduced to the extent of the payment of principal, and its interest obligation was also satisfied up to that time.  . The record is not so clear that we can say whether any further or other payments made satisfied more than the interest then due on the entire mortgage debt.    If so, defendants should be credited therefor on its principal indebtedness. The interest payments made should be first applied on defendants' liability therefor at the time of each payment.    If insufficient to pay the interest then due on the amount secured by the bond, defendants should be chargeable therewith.    Should counsel be unable to agree on the amount due in conformity with what has been said, the trial court shall fix such amount. Further proof relative thereto may be submitted, should counsel so desire.    When such amount shall be agreed upon, or fixed by the trial court, a judgment shall be entered therefor.

3. Extension of Time.    It is defendants' claim that on March 1, 1922, plaintiff entered into an agreement with Wetsman, the then holder of the equity of redemption in the premises, that on payment to him of the sum of $1,783 (six months' interest in advance)

all payments on principal would be deferred for six months, and that such extension, without the consent of the defendants, released their obligation on the bond.

The rule is well established that a valid and binding agreement with a debtor to grant an extension of time for payment will relieve a surety. But, to so operate, the agreement must be made with the debtor; with one from whom payment can be demanded and enforced. It was so held in *Aldous* v. *Hicks,* 21 Ont. Rep. 95, wherein it was said:

"Though the defendant Riches purchased the equity of redemption and covenanted to pay the mortgage, and so has become primarily liable for the mortgage debt as between her and the mortgagor, that does not create any privity of contract between her and the plaintiff, the mortgagee. No right of action arose to the plaintiff whereby he could recover the mortgage debt directly from the purchaser. * * *

"There is, therefore, at the outset, an absence of the threefold relation of creditor, principal debtor, and subsidiary debtor or surety upon which the equitable doctrines invoked operate."

See, also, *Foster* v. *Ivey,* 2 Ont. L. Rep. 480; *Clarke* v. *Birley,* 41 Ch. Div. 422.

While Wetsman purchased subject to the mortgages to plaintiff, he had not assumed or agreed to pay them, and payment could not have been enforced against him. So the rule stated does not apply.

4. Decree of Foreclosure. It appears that in 1923 the plaintiff commenced suit to foreclose his mortgages. On default of appearance, a judgment *nisi* was entered, but afterwards, on recital that it appearing "that the plaintiff has elected to proceed under the powers of sale contained in his mortgage instead of proceeding to final foreclosure," an order of discontinuance was entered. It is clear that defendants' obligation was not extinguished thereby.

5. Private Sale. It cannot be doubted that plaintiff made every reasonable effort to dispose of this property under the powers of sale contained in the mortgages so as to save the defendants harmless. The building is not well located, nor was it properly constructed. But a part of it has ever been occupied, and that for a short time. Mr. McLean, who purchased it for $30,000, testified that offers to sell it for $32,000 had been refused, and that he was—

"willing to dispose of it at the present time for just exactly what it cost me, plus the carrying charge and repairs I put on it."

We are impressed that there was no fraud or collusion between him and the plaintiff, and that the sale made was authorized under the powers of sale and the Ontario statutes regulating the foreclosure of mortgages.

The other questions discussed have received due consideration. There was, in our opinion, no disputed question of fact to submit to the jury.

The cause will be remanded, with direction to the trial court to enter a judgment in conformity herewith. As both parties seek review, no costs of this court will be allowed.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.