KEYWORTH *v.* WIECHERS.

SAME *v.* MORAINE LAND CO.

MINES AND MINERALS—OPTIONS—FORFEITURES—EQUALLY DIVIDED COURT.

Decree giving plaintiff title to lands in dispute excepting one-half of the oil, gas and mineral rights therein, holding that instruments pursuant to which defendants made advancements of substantial sums constituted something more than an option and refusing to enforce forfeiture of defendants' rights is affirmed by an equally divided court.

Appeal from Midland; Hart (Ray), J. Submitted June 8, 1934. (Docket No. 96, Calendar No. 37,875.) Decided December 11, 1934. Rehearing granted June 19, 1935.

Separate bills by Mina B. Keyworth against William F. Wiechers and Moraine Land Company, a Michigan corporation, and against Moraine Land Company and Chemical State Savings Bank, a Michigan corporation, to establish title to certain. oil, gas and mineral rights and for other relief. Cases consolidated. From decree rendered, plaintiff appeals. Affirmed by equally divided court.

*Charles H. Goggin, Chester E. Morris* and *Shields,*
*Silsbee, Ballard & Jennings,* for plaintiff.

*Penny & Clark* and *James E. Ryan,* for defendants.

Potter, J. Plaintiff appeals from a decree by the
circuit court of Midland county, in chancery, giving
her title to the lands and premises in dispute except-
ing one-half of the oil, gas and mineral rights there-
in.

Plaintiff's former husband purchased the 960
acres of land in question on land contract from the
Chemical State Savings Bank, of Midland, Michi-
gan, for $9,600, paying down upon the same $3,000.

Plaintiff acquired the vendee's interest under the
land contract in a property settlement with her hus-
band. The contract of her husband with the bank
was then cancelled, the plaintiff and the Chemical
State Savings Bank, of Midland, entered into a new
contract whereby plaintiff agreed to purchase the
premises for $6,600, paying $1,000 annually upon the
principal, together with interest at seven per cent.,
subject to the taxes for 1926 and 1927.

Plaintiff's former husband had executed an oil
and gas lease, held by the Pure Oil Company. Later,
this lease was cancelled and a new lease entered into
with plaintiff.

The land itself was mostly cutover land and not
highly productive agriculturally, but it was near the
so-called "Porter Pool" of oil and gas, and oil
operators had well-grounded suspicions the prop-
erty was in oil-producing territory.

The real contest here is over the oil, gas and
mineral rights in the premises.

When the 1928 payment of principal fell due upon
the contract, plaintiff obtained an extension of time

within which to make the principal payment of $1,000 by paying about $1,700 in back taxes thereon which she borrowed from Wilford and Carey, of Lansing, giving them as security a one-half interest in royalties on the oil lease. The contract with Wilford and Carey is dated February 27, 1929. It recites that plaintiff, in consideration of $2,000 paid to her, assigns to Wilford and Carey an undivided one-half interest in the land contract between herself and the Chemical State Savings Bank, including a one-half interest in all oil and gas that may be produced on the premises. It further provides that plaintiff may obtain a release of this assignment bought and paid for by Wilford and Carey upon the payment of $4,000 to them at any time she may desire. The $4,000 specified in this contract became due in 1929, payment thereof was demanded, and foreclosure threatened. Being without funds to meet this obligation, plaintiff went to the defendant William F. Wiechers and entered into a contract with him, set forth in the margin as exhibit "1."

---

"EXHIBIT "1""

"This agreement, made and entered into this 27th day of November, A. D. 1929, by and between Mina B. Narmore of Lansing, Ingham county, Michigan, party of the first part, and William F. Wiechers, of Saginaw, Saginaw county, Michigan, party of the second part,

"*Witnesseth:*

"WHEREAS, that under date of November 29, 1927, the said first party entered into a land contract with The Chemical State Savings Bank, a banking corporation, of Midland, Michigan, for the purchase of the following described property, viz.:

"Southeast quarter (¼) of section nine (9), south half (½) of southwest quarter (¼) of section ten (10); north half (½) and southwest quarter (¼) of section fifteen (15); northeast quarter (¼) and north half (½) of southeast quarter (¼) of section sixteen (16), in township thirteen (13) north, range one (1) west, Porter township, Midland county.

said contract having been recorded in the office of the register of deeds in and for Midland county, Michigan, in Liber 2 of Contracts at pages 304–306, on April 23, 1929, and

"WHEREAS, under the terms of said contract, the said first party agreed to pay the sum of six thousand six hundred dollars ($6,600)

In pursuance of this contract, Wiechers advanced $2,462 to pay and discharge two installments of principal due the bank of $1,000 each, plus the accrued interest on the contract amounting to $462. Though Wiechers agreed to pay the $4,000 due, according to the contract, to Wilford and Carey, he neglected to do so.

January 13, 1930, plaintiff caused a demand that Wiechers pay Wilford and Carey to be served on Wiechers. Wiechers then refused to pay the $4,000,

at the rate of one thousand dollars ($1,000) and interest on November 29, 1928, and one thousand dollars ($1,000) and interest annually thereafter until the purchase price was fully paid, and

"Whereas, under date of February 6, 1929, said first party was granted an extension of time of one year or until November 29, 1929, for the payment of the first one thousand dollars ($1,000) on the principal sum above stated, in consideration of the payment by her of the three years' taxes on the nine hundred and sixty acres in Porter township, before March 1, 1929, and

"Whereas, said taxes were paid by said first party leaving the payment due upon principal as of November 29, 1929, the sum of $2,000, together with taxes for the year 1929, and

"Whereas, under date of February 27, 1929, the said first party agreed with J. W. Wilford and James J. Carey, both of Lansing, Michigan, that upon the receipt of the payment of two thousand dollars ($2,000) from them that the said first party would and did agree to assign, transfer and set over to the said J. W. Wilford and James J. Carey a one-half interest in all oil and gas produced from the premises above described, and

"Whereas, in said agreement it was further provided that if at any time the said first party should so desire she could obtain a full and complete release from said assignment upon the payment of the sum of four thousand dollars ($4,000), and

"Whereas, the said first party is desirous of obtaining sufficient financial assistance with which to pay the two thousand dollars ($2,000) now due upon the principal sum of said contract, together with interest thereon and the taxes for the year 1929, and

"Whereas, the said second party hereto is desirous of advancing said necessary financial assistance.

"Now therefore, it is agreed, that the said first party in consideration of the following described acts and things to be done by said second party, hereby agrees, that upon the complete performance by said second party of the acts to be done by him, that she will execute a warranty deed conveying an undivided one-half interest in and to the above described property, both surface and minerals, together with an undivided one-half interest in and to all oil and gas leases now upon said property, with the understanding however, that upon the failure of said second party to fully complete each, every

upon the ground that the Wilford and Carey obligation was usurious. Its amount was reduced to $2,000.

June 19, 1930, notice of cancellation was served by plaintiff upon Wiechers, but this was waived for, in November, 1930, being again in default upon her contract with the bank, plaintiff again negotiated with Wiechers, this time executing a contract, a copy of which is in the margin as exhibit "2," and obtained from Wiechers $1,501.67, giving therefor a

and all acts hereinafter described, which are to be done by him, that then and in that event the said first party is to be released from any obligation hereunder, and any money paid, or acts done, by the said second party, shall inure to the benefit of said first party without obligation hereunder. The said first party further agrees that she will contribute one-half of the current taxes or the sum of two hundred twenty-nine and 50/100 dollars ($229.50), and will pay one-half of all taxes levied and assessed against said property from this date forward if the royalty or rental then payable shall be sufficient to permit her to do so. The said second party agrees that in the event that there is insufficient money to pay said taxes when due that he will supply the required amount to meet the taxes, and the said first party agrees that in the event there is a balance due after the payment of taxes, that said balance shall be divided equally and that her one-half of said balance shall be paid to the second party until the amount of two hundred twenty-nine and 50/100 dollars ($229.50) has been paid. It is further understood that said first party will pay her one-half of whatever revenue may be due and payable to her from the revenue under said lease until the said amount of two hundred twenty-nine and 50/100 dollars ($229.50) has been paid together with whatever other payments said second party has been forced to make by reason of the inadequacy of the amount of revenue at the date the taxes are due.

"In consideration of the above described conveyance to be made and things to be done by said first party, the said second party hereby agrees:

"(1) That he will pay the sum of two thousand dollars ($2,000) now due upon the principal of said contract, together with the sum of four hundred sixty-two dollars ($462) representing the interest now due upon said contract, and the taxes for the year 1929 in the sum of four hundred fifty-nine dollars ($459), said second party hereby acknowledging the receipt of the payment of the first two described items or the sum of two thousand four hundred sixty-two dollars ($2,462).

"(2) Said second party further agrees that upon the receipt of notice from said first party that she has been served with a notice by J. W. Wilford and James J. Carey, or any person for them, requesting the payment of the said sum of four thousand dollars ($4,000), that

receipt, set forth in the margin as exhibit "3." The money received by plaintiff from Wiechers at this time was paid by her to the bank and the default cured.

Subsequent dealings with the property hereinafter referred to do not bear upon the important questions in the case, all of which arise out of contracts hereinbefore referred to.

---

the said second party will within four months of the date of the service of such notice upon said first party pay or cause to be paid to the said first party the sum of four thousand dollars ($4,000) to be used to pay the obligation as provided in the agreement dated February 27, 1929, between said first party and the said J. W. Wilford and James J. Carey.

"(3) Said second party further agrees to pay the balance now due under the above described land contract with the Chemical State Savings Bank of Midland, Michigan, together with interest thereon to date of payment as is provided in said contract and also agrees to pay one-half of the taxes assessed against said property from this date forward.

"It is further understood and agreed that all revenue earned by said property by reason of the use thereof for grazing, sale of wood, or other farming and/or agricultural use, shall inure and belong to the first party hereto, for the period of three (3) years from the date hereof, after which any amount thereby earned shall be divided equally.

"In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.

"MINA B. NARMORE,      (L. S.)

"WILLIAM F. WIECHERS.      (L. S.)

"In presence of:

"EDNA M. DUBEY,

"ARTHUR WEADOCK."

"EXHIBIT "2""

"This agreement, made this twenty-fourth day of November, A. D. 1930, by and between Mina B. Narmore, of Lansing, Michigan, party of the first part, and William F. Wiechers, party of the second part, witnesseth:

"WHEREAS, under date of November 29th, 1927, first party and second party entered into a certain agreement under the terms of which first party sold to second party an undivided one-half (und. ½) interest in the following described property:

"The southeast quarter (S. E. ¼) of section nine (9), south half (S. ½) of southwest quarter (S. W. ¼) of section ten (10); north half (N. ½) and southwest quarter (S. W. ¼) of section fifteen (15); northeast quarter (N. E. ¼) and north half (N. ½) of southeast quarter (S. E. ¼) of section sixteen (16), township 13 north, range 1 west, Porter township, Midland county, Michigan.

Plaintiff contends that exhibit "2" constitutes an option. Defendants contend that exhibit "2" is something more than an option.

Under exhibit "1," plaintiff agreed to sell to Wiechers a one-half interest in the land, together with the oil and gas rights. Wiechers had, by this contract, after three years, an interest in the proceeds from the sale of the wood, the revenue from

"WHEREAS, it is the desire of both parties hereto to make certain modifications in such contract and continue the same in force except as herein expressly modified, it is hereby agreed as follows:

"1. Said contract above mentioned is to be in full force and effect except as herein otherwise expressly modified.

"2. It is expressly understood and agreed by both parties that said contract is modified so that first party agrees to convey to second party an undivided one-half (und. ½) interest in all oil, gas, or minerals, in, on or under, said property, and does not convey any surface rights except such rights as may be necessary for the proper exploration and development of such property for oil, gas or minerals.

"3. Paragraph two (2), on page (4), of said original contract is hereby modified so that the sum payable by second party under the terms of said paragraph shall be two thousand dollars ($2,000.00) instead of four thousand dollars ($4,000.00).

"4. Second party may at his option make payments provided for by said contract, or may decline to make such payments, but in the event such payments are not made, it is understood that second party forfeits all moneys paid upon such contract and shall have no further interest in said property unless he shall within ninety (90) days, after receiving notice of such forfeiture, make the payments then due upon said contract, provided further, however, that in consideration of the payments made at the time of the execution and delivery of this supplemental agreement, that no forfeiture can be declared for a period of twelve (12) months from and after this date.

"In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.

"MINA B. NARMORE,    (L. S.)
"W. F. WIECHERS.    (L. S.)

"In the presence of:
"H. MURDOCK,
"W. S. WEBBER.
"(Back: Agreement.)"

"EXHIBIT "3""

"Received of The Pure Oil Company through W. F. Wiechers, agent, the sum of fifteen hundred one and 67/100 dollars, being an advanced payment upon rentals and royalties that may hereafter come due upon the lease given by Mina B. Narmore, dated the 19th day of April, 1929, recorded in the office of the register of deeds for

grazing, and the revenue from general farming on the 960 acres.

Exhibit "2" was made to make certain modifications in exhibit "1;" and to continue the same in force except as expressly modified by exhibit "2." Exhibit "1" was to be in full force and effect except as modified by exhibit "2." By exhibit "2," Wiechers released a one-half interest to plaintiff in all the surface rights in the land itself, including his interest in the timber, grazing, and the products of agriculture. It left Wiechers the vendee of a one-half interest only in the oil, gas and mineral rights in the land. It reduced the amount to be paid upon the Wilford and Carey contract from $4,000 to $2,000, which amount Wilford and Carey had agreed to accept in discharge thereof. It provided that in consideration of the payment by Wiechers of the sum of $1,501.67 (exhibit "3"), no forfeiture of the contract could be declared within 12 months from the date thereof; that Wiechers could pay further upon the contract, exhibit "1," or not pay thereon,

Midland county, at Misc. N., page 132, covering the following described lands:

"The southeast quarter (S. E. ¼) of section nine (9); the south half (S. ½) of southwest quarter (S. W. ¼) of section ten (10); the north half (N. ½) and the southwest quarter (S. W. ¼) of section fifteen (15); northeast quarter (N. E. ¼) and the north half (N. ½) of southeast quarter (S. E. ¼) of section sixteen (16), township 13 north, range 1 west, Porter township, Midland county, Michigan.

"In the event that oil or gas is found upon said above described property, or any part thereof, within the time during which the rentals are paid in advance upon said lease, it is hereby expressly understood and agreed that The Pure Oil Company is to be reimbursed out of the first oil or gas produced and sold from said premises for all unearned rentals paid on said lease, and the said The Pure Oil Company is hereby authorized to deduct such unearned, advanced rentals from the first money received for oil or gas produced on the above described property.

"Mina B. Narmore.

"Witnessed by:
    "W. H. Wiechers,
    "H. Murdock."

at his option. If he did not pay, he was to forfeit all rights under exhibits "1" and "2." His interest could be terminated only by a 90-day notice of forfeiture and his failure to pay after such 90-day notice. Wiechers had purchased and paid for the vendee's interest in the oil, gas and mineral rights in the land. He had advanced all the money other than that advanced by Wilford and Carey, the obligation to pay which he had assumed, which enabled plaintiff to protect her interest in the property from forfeiture.

There are no compelling equities, no question of fraud, misrepresentation, or over-reaching. Plaintiff acquired the property under land contract in 1927 and now has it paid for without having paid thereon anything she did not get from others to pay thereon.

December 18, 1931, plaintiff served notice of forfeiture of the contracts on defendant Wiechers, "by reason of the nonpayment of the installments of principal and interest due thereunder." November 29, 1931, an installment of $1,000 principal and $252 in interest was due. Wiechers had transferred his interests to the Moraine Land Company. November 25, 1931, the Moraine Land Company paid the bank $252 interest and $500 on the principal, and obtained an extension of time in which to pay the remaining $500 due on principal, taking from the bank a receipt as follows:

"November 25, 1931.

"Received of the Moraine Land Company $752, being $500 to apply on principal of the Mina B. Narmore contract and $252 interest to November 29, 1931. The balance of payment now due of $500 to be paid on or before January 15, 1932.

"CHEMICAL STATE BANK."

The only default was in the payment of the balance of $500 and, by the extension of the time of payment of this $500 by the bank to the Moraine Land Company, plaintiff was released from that payment. The plaintiff stood in the position of a surety.

"A surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities, as is often the case when notes are given or bonds taken; the relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown." *Smith* v. *Shelden,* 35 Mich. 42, 48 (24 Am. Rep. 529).

And the bank ceased to have any lien upon the land for such payment. *Metz* v. *Todd,* 36 Mich. 473.

Time was not made the essence of the contracts between Wiechers and plaintiff and, under the circumstances, in the absence of such a provision in the contracts, time will not be held to be of the essence of the contracts. *Wallis* v. *Pidge,* 4 Mich. 570; *Bomier* v. *Caldwell,* 8 Mich. 463; *Morris* v. *Hoyt,* 11 Mich. 9; *Converse* v. *Blumrich,* 14 Mich. 109 (9 Am. Dec. 230); *Waller* v. *Lieberman,* 214 Mich. 428.

It has been frequently held that the naming of a date on which the payment shall become due does not in itself make time of the essence of the contract. *Morris* v. *Hoyt, supra; Richmond* v. *Robinson,* 12 Mich. 193; *Lozon* v. *McKay,* 203 Mich. 364; *Marussa* v. *Temerowski,* 204 Mich. 271; *Waller* v. *Lieberman, supra.*

Defendants were entitled to a reasonable time after notice of forfeiture within which to perform the contract. *Waller* v. *Lieberman, supra; Sliwinski* v. *Gootstein,* 234 Mich. 74.

The contract between the parties under date of November 24, 1930, says:

"It is understood that second party forfeits all moneys paid upon such contract and shall have no further interest in said property unless he shall within 90 days, after receiving notice of such forfeiture, make the payments then due upon said contract."

When the Moraine Land Company was ready to pay the balance due to the bank, it was found there was an outstanding lease of the premises, of which it was notified by the bank. The bank could not convey an unclouded title to the premises. It was necessary to obtain a surrender and cancellation of this outstanding lease. This was not accomplished until December 1, 1932, upon the payment of $50 to the lessee. The vendor, the bank, was in default until this lease was surrendered and cancelled, and it, and plaintiff claiming under it, had no right to enforce a forfeiture until it was in a position to convey an unclouded title to the premises.

A vendor in default who is not in condition to perform on his part cannot forfeit the contract for nonpayment of the vendee. *Wexler* v. *Poe,* 245 Mich. 442; *Bartlett* v. *Smith,* 146 Mich. 188 (117 Am. St. Rep. 625); *Getty* v. *Peters,* 82 Mich. 661 (10 L. R. A. 465).

Nothing may be claimed by plaintiff by reason of defendants' failure to pay the amount due Wilford and Carey, or to pay the taxes on the premises at the particular time they became due, because no time of payment of these particular items was speci-

fied in the contract. *Kaye* v. *Gerasimos,* 262 Mich. 420.

Default in the payment to Wilford and Carey, or default in the payment of taxes, was not mentioned in the notice of forfeiture. In all, Wiechers and the Moraine Land Company had paid upon this property $7,887.67, and it is for the payment of this sum, the full balance of the purchase price, plus interest and taxes, plaintiff appeals to a court of equity to enforce a forfeiture of the rights of defendants in the premises.

Equity abhors forfeitures.

"A forfeiture is not favored either at law or in equity." *Lyon* v. *Travelers' Ins. Co.,* 55 Mich. 141, 146 (54 Am. Rep. 354).

"Equity dislikes forfeitures and not only will not aid in enforcing them, but will restrict their effect as far as possible." *Hull* v. *Hostettler,* 224 Mich. 365, 369.

Equity relieves against forfeitures when it would be oppressive or fraudulent not to. *Curry* v. *Curry,* 213 Mich. 309; *Hubbell* v. *Ohler,* 213 Mich. 664.

Equity will not enforce a forfeiture and, hence, will not lend its aid to divest an estate for breach of a condition subsequent. *Michigan State Bank* v. *Hammond,* 1 Doug. 527.

A court of equity has no jurisdiction to enforce forfeitures. If a vendor in a land contract desires such relief, he must seek it at law. *Fitzhugh* v. *Maxwell,* 34 Mich. 138.

The trial court held the contracts entered into between the parties constituted something more than an option, and, under the circumstances, equity would not enforce a forfeiture of defendants' rights.

We think the trial court arrived at a correct conclusion, and its decree is affirmed, with costs.

NORTH, FEAD, and WIEST, JJ., concurred with POTTER, J.

EDWARD M. SHARPE, J. November 29, 1927, the Chemical State Savings Bank of Midland, Michigan, sold to plaintiff 960 acres of land in Porter township, Midland county, for the sum of $6,600, payable $1,000 and interest at seven per cent. on November 29, 1928, and $1,000 and interest annually thereafter until fully paid. The contract of sale was in the usual form, requiring plaintiff to pay all taxes and assessments in due season and plaintiff to assume and pay the taxes for the years of 1926 and 1927.

The land is mostly cutover land, having little value for farming but a potential value because it is located near proven oil fields. April 19, 1929, plaintiff leased the oil and gas rights in the property to the Pure Oil Company for a period of seven years. By the terms of the lease the Pure Oil Company agreed to commence drilling on the premises by May 5, 1929, or pay plaintiff annually 50 cents per acre, payable quarterly in advance to plaintiff's credit in the Chemical State Savings Bank.

When the payment on the land contract became due in November, 1928, the plaintiff was unable to comply in full with the terms of the contract and secured an extension from the bank by paying the taxes for the years 1926, 1927, and 1928, amounting to the sum of $1,650. To make this payment she borrowed from Wilford and Carey of Lansing, Michigan, the sum of $2,000 secured by an assignment of

a one-half interest in the land contract and in all oil and gas produced from the premises. By its terms, this assignment could be released or vacated upon plaintiff's payment at any time she might desire of the sum of $4,000.

In November, 1929, the plaintiff's payments due at the bank amounted to $2,000 and interest in the sum of $462. Plaintiff, being unable to pay, entered into an agreement in writing with defendant Wiechers whereby it was agreed that Wiechers should (1) pay the bank the principal and interest then due, aggregating $2,462; (2) pay one-half the taxes for the year 1929 and subsequent years, the plaintiff to pay one-half thereof, if the rentals and royalties were sufficient; (3) pay the Wilford and Carey claim of $4,000 within four months after demand upon the plaintiff to pay same; and (4) pay the balance owing the bank on plaintiff's contract. In consideration of which the plaintiff agreed to convey to Mr. Wiechers by warranty deed of conveyance an undivided one-half interest in and to said premises covering both surface and mineral rights. Upon execution of this agreement, Mr. Wiechers paid the plaintiff $2,462, being the principal and interest then due.

On January 6, 1930, Wilford and Carey requested payment of the $4,000 from plaintiff, who immediately notified Wiechers. The obligation was never paid, but this demand was waived (as was also a notice of forfeiture served by plaintiff on Wiechers on June 19, 1930), by the subsequent conduct of plaintiff in executing the supplemental agreement with Wiechers described hereafter. Subsequently plaintiff obtained a reduction of the Wilford and Carey claim to $2,000.

In November, 1930, before the November 29th installment of $1,000 principal and $322 interest be-

came due, plaintiff again talked with Wiechers with the result that she signed a modification of their former agreement at Wiechers' request. This agreement, dated November 24, 1930, provided that the contract of November 27, 1929, should remain in force except as expressly modified; that plaintiff convey to Wiechers an undivided interest in the oil, gas and minerals, but no surface rights; that the amount payable to Wilford and Carey by Wiechers be reduced from $4,000 to $2,000 and further provided:

"Second party may at his option make payments provided for by said contract, or may decline to make such payments, but in the event that such payments are not made, it is understood that second party forfeits all moneys paid upon such contract and shall have no further interest in said property unless he shall within 90 days, after receiving notice of such forfeiture, make the payments then due upon said contract, provided further, however, that in consideration of the payments made at the time of the execution and delivery of this supplemental agreement, that no forfeiture can be declared for a period of 12 months from and after this date."

At this time plaintiff borrowed from the Pure Oil Company the sum of $1,501.67 on advance rentals and royalties. Of this sum $1,000 was paid to the bank on the land contract and the balance was used to pay the 1929 taxes and penalties accrued thereon. The interest due the bank was paid from royalties theretofore received.

December 2, 1929, defendant Wiechers quitclaimed his interest in the land to one Keeler, trustee, who on April 18, 1931, quitclaimed to the Moraine Land Company. On November 25, 1931, the Moraine Land Company paid the bank $252 interest and $500 on

the principal installment then due and secured an extension until January 15, 1932, of the remaining $500 due on principal.

December 18, 1931, plaintiff sent Wiechers a notice of forfeiture "by reason of the nonpayment of the installments of principal and interest due." Upon request of Wiechers' attorney, plaintiff's attorney sent an itemized account of the amounts due, which account showed an item of interest to April 1, 1932, of $72.36, and other items totaling $6,403.69.

On November 30, 1932, upon payment of $3,172, the bank delivered a warranty deed of the premises, subject to plaintiff's contract, to one Schauppner, who on January 30, 1933, quitclaimed his interests in the land to the Moraine Land Company. February 17, 1933, plaintiff tendered to the bank and the Moraine Land Company the balance due on her contract, but in the meantime and on November 21, 1932, she had filed her bill of complaint for the cancellation of her contract with Wiechers. On March 8, 1933, she filed a bill for specific performance of the bank contract. These bills were consolidated in the circuit court.

The lower court held that plaintiff was entitled to a decree providing as follows: (1) a warranty deed from the defendant Moraine Land Company for the land, excepting and reserving a one-half interest in the oil, gas and minerals; (2) that the defendant Moraine Land Company pay the Wilford and Carey obligation of the plaintiff; (3) that the defendant Moraine Land Company pay all the taxes on said land with interest. Plaintiff appealed.

The principal question is the nature of the original contract with Wiechers as modified by the writing of November 24, 1930. Plaintiff contends that

this modification made the contract nothing more than an option; that her notice of forfeiture given December 18, 1931, became effective March 18, 1932; and that thereafter Wiechers and his assignees had no rights under the original contract or the modification thereof.

*Cameron* v. *Shumway,* 149 Mich. 634, 640, adopted the definition of an option as "a contract by which the owner agrees with another person that he shall have the privilege of buying his property at a fixed price within a limited time." And in *Range* v. *Davison,* 242 Mich. 73, it was held that the test distinguishing an option from a land contract is that in the latter both parties are bound, the seller being obligated to sell and the purchaser to buy. Again in *Bailey* v. *Grover,* 237 Mich. 548, 554, it was said:

"An option is not a contract of purchase, it is simply a contract by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time. An option is but an offer, strict compliance with the terms of which is required; acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost."

An examination of the modified agreement of November 24, 1930, discloses that Wiechers had the right to make payments or decline to do so and that in the event he failed to make payments all prior payments were forfeited. The result of this modified agreement was that no action could be taken against Wiechers in the event that he failed to make any payments. It was not enforceable as against Wiechers, and in line with the decisions above quoted was purely an option and nothing more.

We next come to the question of whether or not the defendant Wiechers and his assignees were in default on December 18, 1931, at the time that plaintiff sent the notice of forfeiture. Under the modified agreement it became the duty of the defendants on November 29, 1930, to pay the bank installment of $1,000 and interest in the sum of $322, together with the 1929 taxes in the sum of $501.67. These items were all paid by accrued or advanced royalties and not by Wiechers or his assignees. On November 29, 1931, it again became the duty of Wiechers to pay the bank installment of $1,000, interest in the sum of $252, and 1930 taxes in the sum of $410.11, together with the Wilford and Carey obligation of $2,000. Of this amount the sum of $500 principal and $252 interest was paid by the Moraine Land Company. Defendants Wiechers and Moraine Land Company contend that there was no default in the payment of the principal inasmuch as the bank had extended the time to January 15, 1932, for payment of the balance of the principal then due. This promise on the part of the bank to extend the time did not release plaintiff from her obligation to the bank. The record is lacking in any evidence to show that the bank substituted the Moraine Land Company for plaintiff as its debtor. Consequently there was no compliance with the terms of the agreement between plaintiff and Wiechers.

The defendants were clearly in default on December 18, 1931, when plaintiff served her notice of forfeiture upon them. No further notice was required, as the agreement of the parties was that the option should be terminated "unless he (Wiechers) shall within 90 days after receiving notice of such forfeiture, make the payments then due upon said con-

tract.'' Such a notice is a reasonable warning and meets all the requirements of the law. Nor do we think that there has been a waiver of the notice of forfeiture. The only waiver claimed by defendants is that plaintiff's attorney included in the itemized list of defaults an item of interest to April 1, 1932, which was beyond the date when the forfeiture should become effective. This does not show an intention to waive, which is an essential element of waiver. 67 C. J. p. 303. Nor is there any estoppel, for the defendants did not rely upon nor were they misled or prejudiced by anything contained in this letter.

Plaintiff is therefore entitled to a cancellation of the Wiechers' contract and, upon payment of the balance due on her land contract, an absolute deed to the premises.

NELSON SHARPE, C. J., and BUSHNELL, J., concurred with EDWARD M. SHARPE, J.

BUTZEL, J. (*concurring in reversal*). I concur in the opinion for reversal. Under the provisions of the contract of November 27, 1929 (exhibit 1), plaintiff, then Mina B. Narmore, was bound to sell, and defendant Wiechers to purchase and pay for a one-half interest in the oil, mineral and surface rights of cutover timber land worth but little for agricultural purposes but of a large potential value if oil in paying quantities should be discovered. On November 24, 1930, a new contract (exhibit 2) was executed. It superseded exhibit 1 and released Wiechers from absolute promises to make specific payments provided in exhibit 1, and left it entirely optional with him to make any further payments of any kind under exhibit 2. He could refuse to pay

and be freed from all obligations of every kind under the new contract. At any time after the new contract had been in existence for a year his rights could be forfeited for default upon notice, but he would have 90 days in which to cure the default. Proper notice was given to him in December, 1931. He had failed to pay $500 of the amount due the vendor bank.

Defendants contend that they were entitled to further time inasmuch as exhibit 2 contained no clause stating that time was of the essence of the contract. Contracts for the lease or purchase of oil, gas and mineral rights are considered in a different class than the ordinary contract containing a forfeiture clause. Notwithstanding the absence of such a clause, time as a rule is of the essence of a contract, lease or option to purchase oil, gas or mineral rights. *Waterman* v. *Banks,* 144 U. S. 394 (12 Sup. Ct. 646); *Campbell* v. *Warnberg,* 133 Kan. 246 (299 Pac. 583). An option must be exercised within the time specified or rights thereunder will be lost. *Olson* v. *Sash,* 217 Mich. 604; *Bailey* v. *Grover,* 237 Mich. 548, 554; *Steed* v. *Pure Oil Co.,* 260 Mich. 699.

In December, 1931, when the notice of forfeiture was given, neither Wiechers nor the Moraine Land Company had paid $500 of the amount that became due the Chemical State Savings Bank, which held the vendor's interest in the contract to plaintiff. It is contended, however, that the fact that the bank stated in its receipt of November 25, 1931, that the balance of the payment of $500 was to be paid on or before January 15, 1932, amounted to an extension and as far as the plaintiff, the vendee, was concerned, it was equivalent to payment; that the extension released plaintiff to the extent of $500 from

her obligation to the bank. Defendants invoke the principles of suretyship and claim that the bank as creditor, having extended the time of payment, to the Moraine Land Company, as debtor, relieves plaintiff as surety. I do not believe there is any question of suretyship involved. The extension was without any consideration. Wiechers and the Moraine Land Company were not bound to pay the bank any sums. Plaintiff was not released by the bank from her obligation to pay. A somewhat similar question arose in *Pulling* v. *Schreiber,* 240 Mich. 333, 339, where, in an opinion written by Mr. Justice NELSON SHARPE, the court said:

"It is defendants' claim that on March 1, 1922, plaintiff entered into an agreement with Wetsman, the then holder of the equity of redemption in the premises, that on payment to him of the sum of $1,783 (six months' interest in advance), all payments on principal would be deferred for six months, and that such extension, without the consent of the defendants, released their obligation on the bond.

"The rule is well established that a valid and binding agreement with a debtor to grant an extension of time for payment will relieve a surety. But, to so operate, the agreement must be made with the debtor; with one from whom payment can be demanded and enforced. It was so held in *Aldous* v. *Hicks,* 21 Ont. R. 95, wherein it was said:

" 'Though the defendant Riches purchased the equity of redemption and covenanted to pay the mortgage, and so has become primarily liable for the mortgage debt as between her and the mortgagor, that does not create any privity of contract between her and the plaintiff, the mortgagee. No right of action arose to the plaintiff whereby he could recover the mortgage debt directly from the purchaser. * * *

" 'There is, therefore, at the outset, an absence of the threefold relation of creditor, principal debtor, and subsidiary debtor or surety upon which the equitable doctrines invoked operate,'

"See, also, *Forster* v. *Ivey,* 2 Ont. L. R. 480; *Clarke* v. *Birley,* 41 Ch. Div. 422 (60 L. T. 948):

"While Wetsman purchased subject to the mortgages to plaintiff, he had not assumed or agreed to pay them, and payment could not have been enforced against him. So the rule stated does not apply."

Although the precise question was not presented in *Bigelow* v. *MacCrone,* 267 Mich. 217, we held in that case that although the vendor in a land contract had granted a two-year extension as to principal payments to the assignee of the vendee, who had assumed and agreed to pay the balance due on the contract, no novation of contract was effected, and the vendor could not maintain an action against the assignee; nor was the vendee relieved from liability to the vendor.

The $500 payment to the bank was not made within the 90 days after the notice of forfeiture was given. Under the circumstances, the notice of forfeiture was properly given and the default was not cured within the time prescribed by the contract.

The decree should be entered for plaintiff as prayed for.

NELSON SHARPE, C. J., and BUSHNELL, J., concurred with BUTZEL, J.